**David Lynn RUTLEDGE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 782–85.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 17, 1988.

Rehearing Denied April 27, 1988.

Lawrence B. Mitchell (on appeal only), Dallas, for appellant.

Henry Wade, Former Dist. Atty. & William Randell Johnson & Dennis E. Guffey, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

This is an appeal from a 1984 conviction for aggravated kidnapping. Appellant pled guilty before the jury who assessed punishment at life imprisonment. The sufficiency of the evidence is not challenged.

On direct appeal, appellant contested the impeachment of a witness with "have you heard" questions. The Dallas Court of Appeals, in a 2–1, published opinion, affirmed the conviction. The court, solely relying on *Livingston v. State,* 589 S.W.2d 395 (Tex. Cr.App.1979), found that the witness was not a reputation witness, but a character witness whose testimony encompassed such a broad range of character traits to sustain "have you heard" questions. *Rutledge v. State,* 693 S.W.2d 681 (Tex.App.—Dallas, 1985). Because the authority relied upon in this opinion conflicts with decisions of this Court, we granted appellant's petition to review that decision and the authority relied upon therein. *See,* Tex.R.App. Proc.R. 200(c)(3). Having done so, we will reverse.

William E. Rawlings was a punishment witness for the defense. Rawlings testified that he had been acquainted with appellant for approximately four years and that for a short period of time they had worked together delivering newspapers. Rawlings further testified on direct,

"Q. Can you tell the members of the jury what type of man David Rutledge has appeared to you to be?

A. He was impeccable, as far as I was concerned.

Q. When you say "impeccable", what do you mean?

A. Well, he'd never drink, he didn't curse, and he was just a nice person to be with.

Q. Had you ever had your grandchildren or children around David Rutledge?

A. No.

Q. Did you have any reason to believe that he would be a danger to—to you or your grandchildren or your children?

A. It's still a shock to me when I found it out.

Q. Are you saying the shock that he pled guilty to the indictment?

A. True.

Q. The man that you knew does not seem that he would have—that he would have done such a thing?

A. Well, the only—the associations I had with him was during the summer, when I really had the association. I've known him off and on, you know. But I—not on a personal basis. But I got to know him during the summer, and know him well.

. . . .

Q. Did you find him to be a good worker?

A. Very good.

Q. Did you find—was he any kind of a trouble maker?

A. Not to my knowledge.

Q. Did he give you any difficulty as far as being prompt and responsive to your demands as to what he needed to do in throwing the paper?

A. No. He always let me know or, you know, let them know at the Waffle House, you know, if he would—was going to be late or for me to pick him up.

. . . .

Q. From what you know about David Rutledge—that is, working with him and being associated with him, at least for those three months—do you feel, in your opinion, that it would be any great benefit to him, helping him, incarcerating him for life? Or a long period of time?

A. I've felt bad about him being incarcerated even for the period that he has been."

Prior to cross-examination, the State, outside the presence of the jury, urged that, based upon the above testimony, it should be permitted to ask "have you heard" questions regarding appellant's prior misconduct involving sexual acts. The trial court reviewed the testimony and, over objection, ruled that the State would be allowed to ask "have you heard" questions regarding prior acts of misconduct.

On cross-examination, the State impeached the witness as follows:

"Q. Mr. Rawlings, have you heard the Defendant fondled a 7 year old girl in Fort Worth, Texas in June of 1979?

A. I have never—

Q. Have you heard that, Mr. Rawlings?

A. Something to that effect, but not exactly that. I didn't know the age of the girl—See, I'm not—I'm a private person.

Q. Have you heard—

Q. (By Ms. Hastings) You said you had not heard that or you had heard part of it. All right.

A. Yes.

Q. Have you heard the Defendant sexually assaulted a 16 year old girl—

A. No.

Q. —In Seminole, Texas, in 1980?

A. No."

It is axiomatic that where the accused places his reputation in issue, through the testimony of a witness, the witness can be impeached on cross-examination with "have you heard" questions. *Johnson v. State*, 633 S.W.2d 888, 891–892 (Tex.Cr.App.1982); *See generally*, 2 Ray 1 *Texas Practice— Texas Law of Evidence Civil and Criminal*, Sec. 1492, pp. 169–176 (3d ed. 1980). The rationale for this rule is discussed in *Brown v. State*, 477 S.W.2d 617, 619–620 (Tex.Cr.App.1972), which states,

The rationale behind this rule is that reputation is an opinion based on hearsay. The reputation witness states his opinion based on that which he has heard from others concerning the defendant. In order to test this opinion, the prosecution is allowed to determine whether the witness has *heard* (not whether he *knows*) of acts or reports which would be inconsistent with a good reputation. The theory is that if the witness is truly familiar with the reputation of the defendant, he will have also heard of adverse reports which are circulating in the community. This is consistent with the nature of reputation evidence, that is, an opinion based on hearsay. Reputation does not concern that which a person *is*, but rather, that which he is thought to be. Thus, a question regarding an act of misconduct which, by its very nature, is likely to be a part of the person's reputation in the community, is appropriate as a means of testing the weight or credibility of the witness' opinion. [citations omitted].

. . . .

It should be kept in mind that the purpose of the cross-examination is not to discredit the person on whose behalf the witness is testifying, but rather, the

purpose is to affect the weight of the witness' testimony. [citations omitted]. Thus, since reputation is based on hearsay, an examination as to whether the witness has heard hearsay inconsistent with his opinion is proper. 477 S.W.2d at 620.

The Court of Appeals properly held that the instant witness was not a reputation witness, but a character witness. However, from this statement forward the opinion runs awry. Noting that generally character witnesses are not subject to impeachment by "have you heard" questions, the court went on to hold that this character witness was subject to "have you heard" impeachment because his testimony encompassed "a broad range of character traits, going so far as to infer general good character." *Rutledge,* 693 S.W.2d at 683. The court cited *Livingston,* supra, as sole authority for this holding. While *Livingston* stands for the rule of law espoused by the Court of Appeals, the *Livingston* opinion itself is of dubious efficacy. *Livingston* relied upon and followed the law announced in *Childs v. State,* 491 S.W.2d 907 (Tex.Cr.App.1973). However, *Childs,* and its progeny, have long since been overruled by this Court in *Ward v. State,* 591 S.W.2d 810 (Tex.Cr.App.1978) (Opinion on State's Motion for Rehearing). In *Ward* we stated,

> Since the purpose of a have you heard question is to test the witness who purports to be familiar with hearsay and rumors of the accused's reputation, a witness who has not professed to be familiar with that reputation in the community could not logically be discredited by questions of whether he has heard other rumors of acts inconsistent with that reputation. Simply stated, there is no reasonable basis for asking have you heard questions of a witness who testifies to his personal opinion of someone's character, as opposed to the reputation of that person's character. *Ward, supra* at 818.

At this point in time it should be crystal clear that *Childs* and the cases following it are overruled. *See,* e.g., *Livingston,* supra; *Williams v. State,* 566 S.W.2d 919, 925–926 (Tex.Cr.App.1978); *Mitchell v.*

*State,* 517 S.W.2d 282, 287 (Tex.Cr.App. 1974); *Hurd v. State,* 513 S.W.2d 936, 945 (Tex.Cr.App.1974); *Partida v. State,* 506 S.W.2d 209, 212 (Tex.Cr.App.1974); *Howard v. State,* 505 S.W.2d 306, 310–311 (Tex.Cr.App.1974); *Navajar v. State,* 496 S.W.2d 61, 65 (Tex.Cr.App.1973); *Salazar v. State,* 494 S.W.2d 548, 549 (Tex.Cr.App. 1973). And now, *Rutledge v. State,* supra, and the cases following it, *see,* e.g., *Rajski v. State,* 715 S.W.2d 832, 836 (Tex.App.—Houston [14th Dist.] 1986, no pet.), are also overruled.

■ "Have you heard" questions are properly utilized to impeach a witness who claims a familiarity with hearsay as to the defendant's reputation. However, when a witness simply testifies to his personal knowledge of the defendant's character, such a witness cannot be impeached with "have you heard" questions. *Nixon v. State,* 653 S.W.2d 443 (Tex.Cr.App.1983); *Johnson v. State,* 633 S.W.2d 888 (Tex.Cr. App.1982) (and cases cited therein); *Long v. State,* 631 S.W.2d 157 (Tex.Cr.App.1982); *Penagraph v. State,* 623 S.W.2d 341 (Tex. Cr.App.1981); *Ward v. State,* 591 S.W.2d 810 (Tex.Cr.App.1978); *Schumaker v. State,* 704 S.W.2d 548 (Tex.App.—Corpus Christi 1986, no pet.); *Powell v. State,* 663 S.W.2d 465 (Tex.App.—Houston [1st Dist.] 1983, no pet.).

■ The instant witness did not testify to appellant's reputation in the community, but only referred to his personal and work relationship with appellant. The witness' testimony that appellant "was impeccable, as far as I was concerned ... he'd never drink, he didn't curse, and he was just a nice person to be with" does not constitute reputation testimony. The State's "have you heard" questions concerned appellant's reputation for illegal sexual conduct with children and did not refer to acts inconsistent with the character traits that the witness testified about. *Els v. State,* 525 S.W.2d 11 (Tex.Cr.App.1975). Therefore, the "have you heard" questions were improperly permitted.

This holding will surely spur the proponents of the argument that such precedent

**54**

requires "magic words" such as "reputation" to be uttered before reputation is placed in issue. *See, Ward, supra* at 818 (Judge Douglas' dissent on Motion for Rehearing). It is well taken that if "magic words" are required, then defendants can easily avoid creating reputation witnesses and the attendant risk of "have you heard" questions. By not using the "magic words" and allowing the witness to testify to community opinion, the defendant can leave the jury with the impression that his reputation is good and the State cannot thereafter impeach such testimony. However, this is not the case. We do not hold that "magic words" such as "reputation" are required for a character witness to step over that fine line and become a reputation witness. However, the determination of when a character witness does become a reputation witness must be carefully and prudently made by the trial court on a case by case basis. In any event, the testimony must clearly go further than the testimony we are presented herewith today.

The error here occurred at the punishment phase of the trial, but it could only have served to prejudice the jury in its assessment of punishment. The "have you heard" questions showed rumors of two extraneous and inadmissible acts of sexual misconduct with children. The obvious effect of this on a jury assessing punishment in an aggravated kidnapping case involving the sexual molestation of a small child was made manifest in the note sent out by the jury stating, "[w]as the Defendant convicted of the sexual charges brought up during testimony?" Additional proof of harm is evidenced by the maximum punishment assessed.

The judgment of the Court of Appeals is reversed. The case is remanded to the trial court. *See,* Art. 44.29(b), V.A.C.C.P. *Ex parte Sewell,* 742 S.W.2d 393 (Tex.Cr.App. 1987, Opinion on State's Motion for Rehearing).

TEAGUE, J., not participating.