Rogers v. State 















IN THE
TENTH COURT OF APPEALS
 

No. 10-92-280-CR

     HAROLD DON ROGERS,
                                                                                              Appellant
     v.

     THE STATE OF TEXAS,
                                                                                              Appellee
 

From the County Court at Law
Johnson County, Texas
Trial Court # M91-03505
                                                                                                    

O P I N I O N
                                                                                                    

      A jury found Harold Rogers guilty of indecent exposure and assessed punishment at forty-five
days in jail and a $750 fine. Roger argues that the information was fundamentally defective. He
further contends that the court erred in denying his motion to suppress the evidence seized as a
result of an illegal stop and arrest. We affirm.
      On November 18, 1991, Angel Graywolf, an employee at the Sonic Drive-In in Burleson,
served Rogers a large chocolate milk shake he had ordered. As she handed Rogers his shake, she
noticed that he did not have on any pants or underwear and his genitals were exposed. After
handing Rogers his change, Graywolf ran back inside.
      Graywolf immediately reported the incident to her boss, Kristal Elliot, who phoned the police. 
Both women watched Rogers leave the Sonic by the rear exit and drive behind the bank in the
adjacent office complex while Elliot was on the phone with the police dispatcher. Elliot described
the car as a brown and gold two-tone Pontiac Grand Am with a license plate containing the
numbers "33" in sequence. She also described the driver as a white male wearing a white t-shirt. 
      The police dispatcher broadcast the description given by the witnesses and dispatched two
marked police units to the Sonic. As officer Waits neared the drive-in, he saw a gold Pontiac
Grand Am coming from the direction of the Sonic. The car was being driven by a white male,
wearing a white t-shirt, and the license plate contained the numbers "33" in sequence. Waits, after
confirming the description, stopped the vehicle for investigative purposes.
      Waits approached the vehicle and Rogers handed Waits his driver's license. Waits noticed
a cup with the Sonic logo on it sitting on the console of the car. Waits then checked the car's
registration through his dispatcher. Waits explained to Rogers that there was a "situation"
unfolding at the Sonic, but that he did not know the details. The two men then waited for Officer
Carson to arrive.
      Waits testified that during this time Rogers was not under arrest, but was briefly detained for
investigative purposes. At approximately 8:35 p.m., four minutes after the stop and only ten
minutes after the initial dispatch, Carson arrived and read Rogers his Miranda warnings prior to
any questioning about what had happened at the Sonic. Rogers then told the officers that he had
been at the Sonic and had purchased a chocolate milk shake.
      Waits called the dispatch officer so that he could get a more detailed description of the suspect
and what he had ordered. Graywolf stated that the suspect was a white male, in his mid-twenties,
with brown hair and possibly a mustache. She also said that he had only ordered a chocolate milk
shake.
      Based on the information received from the dispatcher, Waits continued to detain Rogers until
his supervisor, Sergeant Mattix, arrived a few minutes later. Mattix sent Officer Baker to the
Sonic to bring Graywolf and Elliot to the scene of the stop. While he waited for Graywolf and
Elliot to arrive, Mattix spoke with Rogers, who admitted he had exposed himself.
      At approximately 8:40 p.m., only fifteen minutes after the original dispatch and only nine
minutes after the investigative stop, Baker returned to the scene of the stop with Graywolf and
Elliot. The women positively identified Rogers as the man who had exposed himself. Rogers was
then taken into custody for indecent exposure.
      In his first point Rogers contends that the court erred in failing to quash the information as
fatally defective. Rogers filed a motion to quash the original information, which was later
amended. He never filed a motion to quash the amended information. 
      Rogers waived any complaint about the form or substance of the amended information on
which he was tried and convicted by not attacking it in the trial court. See Tex. Code Crim.
Proc. Ann. art. 1.14(b) (Vernon Supp. 1993). We overrule point one.
      In his third point, Rogers argues that the court abused its discretion by failing to suppress
evidence obtained as a result of an illegal arrest. The test to determine probable cause to arrest
is whether, at the moment the arrest was made, the facts and circumstances known by the officer,
or of which he has reasonably trustworthy information, were sufficient to warrant a prudent man
to believe that the suspect had committed, or was committing, an offense. Adams v. Williams, 407
U.S. 143, 148, 92 S.Ct. 1921, 1924, 32 L.Ed.2d 612 (1972). At the moment of the arrest,
Officer Waits either knew, or had reasonably trustworthy information, that: (1) a crime had been
committed at the Sonic Drive-in minutes earlier; (2) the victim and a witness had immediately
called the police; (3) the suspect was a white male wearing a white t-shirt and driving a gold
Pontiac Grand Am; (4) the license plate on the vehicle included the numbers "33" in sequence; (5)
the vehicle was seen leaving the rear of the Sonic behind the bank; (6) Waits was less than a half
mile from the Sonic when he saw a gold Grand Am with "33" in sequence on the license plate; (7)
Waits confirmed the description with the dispatcher; (8) Waits stopped the car six minutes after
the initial dispatch; (9) Waits observed a cup with the Sonic logo in the front of the vehicle; (10)
Rogers had been to the Sonic; (11) Rogers had ordered only a chocolate milk shake at Sonic; (12)
Rogers and his car fit the description given by Graywolf and Elliot; (13) Rogers told Sergeant
Mattix that he had exposed himself; and (14) Graywolf and Elliot positively identified Rogers as
the man who had exposed himself at the Sonic. 
      These factors, viewed in the light of Waits' training and experience, were sufficient to warrant
a man of reasonable prudence to believe Rogers had committed an offense that was either a breach
of the peace or a felony. See id.; Tex. Code Crim. Proc. Ann. art. 14.03 (Vernon 1977). Thus,
we find that the officers properly arrested Rogers upon probable cause to believe he had committed
a crime. Because the evidence was seized as incident to a legal arrest, we overrule point three.
      Rogers' second point, that the court abused its discretion by not suppressing the evidence
obtained as a result of an illegal stop, is not reached because we have already determined that the
evidence was properly seized in connection with his legal arrest. 
      We affirm the judgment.
                                                                                 BOB L. THOMAS
                                                                                 Chief Justice

Before Chief Justice Thomas,
          Justice Cummings, and
          Justice Vance
Affirmed
Opinion delivered and filed July 14, 1993
Do not publish



 the couch touching M. She also stated that she saw Murphy’s hand
between M’s legs, which were apart. She could see part of Murphy’s hand, above the second
knuckle, but could not see the tips of his fingers.
      The State called Dr. Lauren Barron, a physician who examined M. several days after the
second incident. Dr. Barron testified that her examination of the patient revealed no genital
abnormalities. She also testified that, due to the “destendable” (flexible) design of the female
genitalia, penetration by a finger or other instrument would not necessarily have been evident from
the examination she performed. Dr. Barron concluded from her examination that she could neither
confirm nor eliminate the possibility of penetration. She also testified to the general structure of
the female sexual organ, stating that it includes the labia majora, the labia minora, the clitoris and
the vagina introitus. She stated that, in general, a woman’s legs must be spread apart before the
area beneath the labia majora (including the urethra, labia minora, and vagina introitus) can be
exposed.
Penetration - applicable law
      The State may prove penetration by circumstantial evidence. Villalon v. State, 791 S.W.2d
130, 133 (Tex. Crim. App. 1990). The victim need not testify as to penetration. Id. Evidence
of the slightest penetration is sufficient to uphold a conviction, so long as it has been shown
beyond a reasonable doubt. Luna v. State, 515 S.W.2d 271, 273 (Tex. Crim. App. 1974);
Rodriquez v. State, 762 S.W.2d 727, 732 (Tex. App.—San Antonio 1988), pet. dism’d as
improvidently granted, 815 S.W.2d 666 (Tex. Crim. App. 1991). In Vernon v. State, the Court
of Criminal Appeals determined what constitutes a “penetration” for purposes of aggravated sexual
assault. That court held:
[M]ere contact with the outside of an object does not amount to penetration of it. But
pushing aside and reaching beneath a natural fold of skin into an area of the body not
usually exposed to view, even in nakedness, is a significant intrusion beyond mere
external contact. Consequently, it is not ungrammatical to describe Appellant’s touching
of complainant in this case as a penetration.

841 S.W.2d 407, 409 (Tex. Crim. App. 1992).
Application of Law to Facts
      In this case, M. testified that Murphy rubbed her “first and second holes”, that it was painful
when Murphy did so, and that Murphy used two fingers and lotion during the incident. Her
mother testified that she observed Murphy and M. on the couch, with M.s legs spread apart and
Murphy’s hand between M.’s legs, touching her pubic area. She could see part of Murphy’s hand,
but not the tips of his fingers. In light of this evidence and the medical testimony describing the
structure of the female genitalia, a reasonable fact-finder could have concluded that Murphy’s
fingers penetrated M.’s sexual organ if they reached beyond the outer layer of skin comprising the
external genitalia or labia. The evidence is thus legally sufficient to support the jury’s verdict. 
Murphy’s first issue is overruled.
Factual Sufficiency – applicable law
      In his second issue, Murphy asserts the evidence is factually insufficient to establish the
element of penetration. In conducting a factual-sufficiency review, we examine all of the evidence
impartially, without the prism of “in the light most favorable to the verdict,” and set aside the
verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong
and unjust. Cain v. State, 958 S.W.2d 404, 410 (Tex. Crim. App. 1997); Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). When performing our review, we give due deference
to the fact finder’s assessment of the weight and credibility of the evidence. Calhoun v. State, 951
S.W.2d 803, 810 (Tex. App.—Waco 1997, pet. ref’d). We will defer to the jury, finding the
evidence factually insufficient only where necessary to prevent manifest injustice. Cain, 958
S.W.2d at 407. 
The Evidence
      As a component of our duty to examine all of the evidence, Murphy invites us to consider the
lack of physical evidence of penetration, as well as M.’s testimony that Murphy merely “touched”
or “rubbed” her. Murphy also cites the failure of the victim’s mother to contact the police for
several days after she witnessed the incident. Finally, Murphy asks us to consider his own denial
of the incident, his testimony that he was taking medication at that time which limited his sex
drive, and the victim’s mother’s decision to move back in with Murphy within a month after the
incident.
Application of Law to Facts
      The lack of physical evidence of penetration in this case does not render the evidence factually
insufficient where the treating physician testified that her examination could neither establish nor
preclude the possibility that M.’s sexual organ was penetrated. Although M. used inexact terms
to describe the incident, she sufficiently communicated the area on her body that Murphy touched. 
In view of the medical testimony as to the structure of the female genitalia, the testimony of the
victim and the testimony of the victim’s mother, a conclusion that Murphy caused the penetration
of M.’s sexual organ is not so contrary to the overwhelming weight of the evidence as to be clearly
unjust. 
      Murphy’s contentions regarding the side effects of his medication do not directly contradict
any evidence tending to establish the assault. The same holds true for evidence of the victim’s
mother’s failure to immediately notify the police, or her decision to cohabitate with Murphy after
the incident. 
      Although Murphy denied any inappropriate contact with M., the trier of fact is the sole judge
of the weight and credibility of the witnesses and may believe or disbelieve all or any part of any
witness' testimony. Williams v. State, 692 S.W.2d 671, 676 (Tex. Crim. App. 1984). We do not
resolve any conflict in fact or evaluate the credibility of the witnesses. See Juarez v. State, 796
S.W.2d 523, 524 (Tex. App.—San Antonio 1990, pet. ref'd). After reviewing all of the evidence
offered at trial, we cannot say that the verdict is “so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust.” Clewis, 922 S.W.2d at 129 (Tex. Crim. App. 1996). 
Murphy’s second issue is overruled.
HAVE YOU HEARD?
      In his third issue, Murphy contends the trial court erred in allowing the State to improperly
impeach a character witness during the punishment phase with a “have you heard” question. 
Specifically, Murphy asserts the State failed to establish a proper factual basis for the question and
that the question was not relevant to the trait testified to by the witness. 
      Under Texas Rule of Evidence 405(a), a defendant may offer reputation and opinion evidence
of his good character, and character witnesses may be cross-examined regarding their awareness
of specific instances of the defendant’s conduct. Tex. R. Evid. 405(a). Before such cross-examination can take place, the State must establish a two-part predicate for the question. First,
there must be a factual basis for the incidents inquired about; and second, the incidents must be
relevant to the character trait at issue. Lancaster v. State, 754 S.W.2d 493, 496 (Tex.
App.—Dallas 1988, pet. ref’d.). The predicate must be laid outside the jury’s presence. Id.
Factual Basis
      Murphy’s mother was called by defense counsel during the punishment phase of the trial. She
testified that Murphy was a Christian, loves his family, attends church, and is a good father and
a good son. She further testified that Murphy had never been convicted of a felony and asked that
the jury consider probation. On cross-examination, the prosecutor asked her if she had heard that
Murphy had been convicted of indecent exposure in 1977. The defense objected, and a hearing
was held outside the presence of the jury to determine the State’s good faith basis for posing the
question. The prosecutor stated that she had the judgment, Murphy’s criminal history, and the
offense report indicating that Murphy’s mother bonded him out after his arrest. Still outside the
presence of the jury, the Court allowed the State to introduce the offense report and the judgment
of conviction for record purposes only and to cross-examine Murphy’s mother about the
conviction. She testified that she did not remember the incident. The Court ruled that the State
had a good faith basis for the question and allowed the State to continue its cross-examination
before the jury. In front of the jury, Murphy’s mother indicated that she remembered the
conviction,


 but could not say whether such knowledge would change her opinion that probation
was appropriate.
Applicable Law and Application – good faith basis
      Murphy asserts that only evidence that would be admissible at trial may serve as a
prosecutor’s good-faith basis for a “have you heard” question. The Court of Criminal Appeals,
however, has made it clear that a good-faith basis may rest on evidence that would not necessarily
be admissible at trial, such as an offense report,


 investigation report,


 and arrest record.


 This
is because such questions “are designed not to discredit the person on whose behalf the witness
is testifying, but . . . to affect the weight of the witness’s testimony.” Brown v. State (Tex. Crim.
App. 1972). The risk that the jury will consider the content of the question as substantive
evidence is mitigated by the requirement that the prosecutor have a good faith basis to believe that
the incident actually occurred. Starvaggi v. State, 593 S.W.2d 323 at 328. Here, the offense
report and judgment of conviction sufficiently provided a good faith basis for inquiry into the
witness’s awareness of the incident.
Applicable Law and Application – relevance of incident
      The incidents forming the basis of the “have you heard” question must also be relevant to the
character trait at issue. Lancaster v. State, 754 S.W.2d at 496. Here, Murphy placed his
suitability for probation at issue by calling witnesses who offered their assistance in ensuring that
Murphy would abide by the conditions of his probation. By doing so, Murphy “opened the door”
for evidence of specific instances of misconduct that would tend to mitigate against suitability for
probation. Griffin v. State, 787 S.W.2d 63, 67 (Tex. Crim. App. 1990); Murphy v. State, 777
S.W.2d 44, 67-68 (Tex. Crim. App. 1988); Anderson v. State, 896 S.W.2d 578, 579 (Tex.
App.—Fort Worth 1995, pet. ref’d). Murphy’s third issue is overruled.
“HAVE YOU HEARD” VERSUS “DID YOU KNOW”
      In his fourth issue, Murphy contends the trial court erred in allowing the State to impeach
Murphy’s mother with a “have you heard” question because she was not a character witness. A
witness who testifies as to the good character of the defendant may be cross-examined on relevant
specific instances of misconduct that would tend to affect the witness’s opinion. Tex. R. Evid
405(a); Lancaster v. State, 754 S.W.2d at 495. As discussed above Murphy’s mother testified that
Murphy was a Christian, attended church, was a good father and a good son, and had never been
convicted of a felony. She opined that he was a good candidate for probation and therefore the
jury should consider Murphy for probation. She offered to take responsibility for him until he
discharges the conditions of the probation. As also discussed above, this testimony placed
Murphy’s suitability for probation at issue in that the witness offered her opinions as to his
suitability, and her support in ensuring that Murphy would meet the conditions of his probation. 
Griffin v. State, 787 S.W.2d at 67. The State then had the right to offer evidence tending to rebut
Murphy’s suitability for probation, including specific instances of misconduct if the prosecutor had
a good faith belief that the misconduct occurred. Tex. R. Evid 405(a); Lancaster v. State, 754
S.W.2d at 495. Murphy’s fourth issue is overruled.
      Murphy notes in his brief that, to the extent his mother was a character witness, she was an
opinion witness only and it was therefore improper for the State to pose to her a “Have you
heard?” question as opposed to a “Did you know?” question. Traditionally, character witnesses
who testify to their first-hand perceptions of the defendant are cross-examined with “do you
know” questions, while witnesses who testify to the defendant’s reputation in the community are
cross-examined with “have you heard” questions. Rutledge v. State, 749 S.W.2d 50, 53 (Tex.
Crim. App. 1988). The purpose of a “have you heard” question is to test the extent of the
witness’s knowledge of the defendant’s reputation in the community. Id. See 1 Steven Goode
et al., Texas Practice: Guide to the Texas Rules of Evidence: Civil and Criminal §
405.2.4 (2d ed. 1993). The traditional view is that a witness who has testified to knowledge of
the defendant’s reputation in the community can be impeached by questions of whether he has
heard about specific instances of conduct inconsistent with that reputation. Rutledge, 749 S.W.2d
at 53. Conversely, a witness who testifies as to his personal opinion of the defendant’s character
cannot be discredited by rumors circulating in the community that would be unlikely to affect his
opinion even if he had heard them. Goode et al., supra. This distinction was the state of the
law when the rules of evidence were adopted in 1985. The seminal case was Rutledge, which was
tried before the new rules were in effect. Rutledge, 749 S.W.2d 50, 51. However, Texas Rule
of Evidence 405(a) does not draw a distinction between “reputation” witnesses and “opinion”
witnesses, nor does the rule itself limit cross-examination of character witnesses to any particular
form. The rule provides:
In all cases in which evidence of a person’s character or character trait is admissible,
proof may be made by testimony as to reputation or by testimony in the form of an
opinion. In a criminal case, to be qualified to testify at the guilt stage of a trial
concerning the character or character trait of an accused, a witness must have been
familiar with the reputation, or with the underlying facts or information upon which the
opinion is based, prior to the day of the offense. In all cases where testimony is admitted
under this rule, on cross-examination inquiry is allowable into relevant specific instances
of conduct.

Tex. R. Evid. 405(a). 
      The drafters of Federal Rule of Evidence 405(a), which is essentially identical to the Texas
rule, apparently found that the distinctions between “have you heard” and “did you know”
questions “are of slight if any practical significance and the second sentence of subdivision (a)
[which is the last sentence of the Texas rule] eliminates them as a factor in formulating questions.” 
Fed R. Evid. 405(a) advisory committee’s note. As Professor Wendorf states: 
While it is clearly preferable to focus the witnesses’ attention more precisely on what
they have heard or on what they know, the ultimate purpose of the last sentence of Rule
405(a) is to determine whether the witnesses really know what they are talking about
when they offer either opinion or reputation testimony about another person.

Hulen D. Wendorf et al., Texas Rules of Evidence Manual, IV-113 (5th ed. 1995).
      In the present case, the prosecutor’s good faith basis for asking Murphy’s mother if she had
heard of the indecent exposure conviction stemmed from the indication on the offense report that
his mother posted his bond. Although imprecise language was used, it is clear from the record
that the prosecutor was probing the witness’s personal knowledge of the incident, not testing the
witness’s awareness of the defendant’s reputation in the community. 
      Additionally, a review of the record reveals Murphy’s objection focused the court’s attention
on the good faith basis for the question and not the form of the question. Even if the objection was
adequate, and it is determined that the trial court erred in allowing the question in its given form,
we hold it was harmless.
CONCLUSION
      Having overruled all issues about which Murphy complains, the judgment of the trial court
is affirmed.
 
                                                                               TOM GRAY
                                                                               Justice


Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed 
Opinion delivered and filed November 24, 1999
Publish