TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00657-CR







Sean David Carpenter, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF BELL COUNTY, 27TH JUDICIAL DISTRICT


NO. 46,430, HONORABLE JOE CARROLL, JUDGE PRESIDING







PER CURIAM


 A jury convicted Sean David Carpenter of aggravated assault with a deadly weapon and
assessed sentence at ten years in prison. Following the jury's recommendation, service of the sentence was
probated. Carpenter raises twenty-two points of error on appeal, complaining of a witness's allusions to
extraneous offenses, the prosecutor's improper impeachment evidence and techniques, and the
prosecutor's improper jury argument. We will affirm.

 Carpenter was convicted of assaulting Elizabeth Ann Lynch. About three weeks before
the assault, Lynch had moved out of their shared residence after living with Carpenter for two years. A
reconciliation attempt ended with the assault. At trial, each accused the other of flying into a rage and
initiating the attack. Lynch said Carpenter wrapped his t-shirt around her neck and twisted it, tightening
it until she lost consciousness; she testified that a few days later he told her he should have finished her off. 
Carpenter said that she hit him first and suffered the bruises on her arms when he defended himself from
her attack. He said that the marks on her neck came from a sling she had worn for six weeks following
a shoulder injury. The jurors chose to believe Lynch.

 The first twenty points of error deal with the mention of extraneous offenses. Evidence of
other crimes, wrongs, or acts is not admissible at the guilt/innocence phase to prove the character of the
person in order to show that he acted in conformity therewith; it may be admissible to prove motive,
opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. Tex. R.
Crim. Evid. 404(b). This evidence must be relevant (i.e. tend to make the existence of a consequential fact
more or less probable) and its probative value must not be substantially outweighed by the risk of unfair
prejudice. Tex. R. Crim. Evid. 401, 403.

 By point of error one, Carpenter contends the trial court erred by not granting a mistrial
following Lynch's nonresponsive answer during redirect examination in which she referred to an extraneous
offense or misconduct. During direct examination, she said she was afraid of Carpenter during the
confrontation because of the way he was acting and because she had feared him before. During cross
examination, he attempted to impeach her by introducing a prior statement that she had never seen him act
the way he did that day. On redirect, the State sought to harmonize these statements by asking:

Q: Were his actions different than they had been in those prior arguments and
troubles?


A: Yes.


Q: How were they different that day? How was he different?


A: I felt that he would hurt me more than he's ever hurt me before.



(Emphasis added.) The court sustained Carpenter's objection to the italicized portion as alluding to an
extraneous offense or extraneous conduct. The court instructed the jury to disregard the nonresponsive
answer but refused to grant a mistrial.

 We review the refusal to grant a mistrial for an abuse of discretion. See Kipp v. State, 876
S.W.2d 330, 339 (Tex. Crim. App. 1994). Harm from improper references to extraneous offenses can
be corrected by a withdrawal and an instruction to disregard unless the evidence clearly inflames the minds
of the jurors and creates an impression that cannot be withdrawn. Id. In Nobles v. State, the court's
instruction cured the harm from a statement that the defendant did not want to go back to prison. 843
S.W.2d 503, 514 (Tex. Crim. App. 1992). Lynch's testimony implying Carpenter had hurt her before was
less inflammatory. She mentioned no specifics and clearly stated that she feared this time would be worse
than the previous times, thus downplaying the previous incidents. Further, this testimony did not add much
to her previous testimony, unchallenged on appeal, that she had been afraid of him before. Her comment
was not repeated nor did the State rely on it. The trial court's instruction cured any error and therefore the
trial did not abuse its discretion by not granting a mistrial. We overrule point one.

 Carpenter's next nineteen points of error address the State's cross-examination of his
reputation witnesses. Each of the five witnesses testified that Carpenter had a good reputation for peace
and quietude. On cross-examination, the State asked them whether they had heard about particular actions
by Carpenter. The State did not ask each witness about each action. Carpenter objected to every
question about the particular actions and the trial court overruled every objection to a "have you heard"
question. Eighteen of the points of error challenge the propriety of the substance of the State's questions;
the other attacks the form of a question to one witness.

 We review the court's decision to admit evidence on an abuse of discretion standard. See
Montgomery v. State, 810 S.W.2d 372, 390 (Tex. Crim. App. 1990). Opponents can attempt to
impeach witnesses who claim familiarity with hearsay about a defendant's reputation by asking if the
witnesses have heard of particular incidents inconsistent with that reputation. Rutledge v. State, 749
S.W.2d 50, 53 (Tex. Crim. App. 1988). The attack is aimed, not at the defendant, but at the credibility
of the witnesses and the weight to be given their testimony; if their favorable impression was formed without
hearing of particular bad acts, that impression may be accorded less weight. Id. at 52-53. The impeaching
questions must relate to the reputation for the specific trait about which the witnesses testified. Ward v.
State, 591 S.W.2d 810, 814 (Tex. Crim. App. 1978) (testimony about man's reputation for being good
husband and father does not open door to questions regarding violence toward others). Case law formerly
required reversal when the State attempted to impeach reputation witnesses by asking whether the
witnesses knew of the defendant's commission of specific acts of misconduct rather than whether they had
heard that the defendant had committed them. Webber v. State, 472 S.W.2d 136, 138-39 (Tex. Crim.
App. 1971). The court backed away from this absolute rule in Carey v. State, recognizing that curative
instructions might be sufficient in some cases. 537 S.W.2d 757, 759 (Tex. Crim. App. 1976). The
continued vitality of the drastic, bright-line rule from Webber is still uncertain. Bratcher v. State, 771
S.W.2d 175, 185-87 (Tex. App.--San Antonio 1989, no pet.) (automatic reversal for using the wrong
form of question likely did not survive adoption of Tex. R. Crim. Evid. 405); but see Thomas v. State, 759
S.W.2d 449, 452 (Tex. App.--Houston [14th Dist.] 1988, pet. ref'd) ("old general limits on cross-examination still apply").

 Before reaching the points of error directed to the substance of the cross-examination, we
will address the point of error directed to the form of a disallowed cross-examination question. By point
seventeen, Carpenter contends that the trial court erred by not ordering a mistrial when the prosecutor said
to a reputation witness, "Were you aware that his mother had to place him in foster care because of his--;"
Carpenter interrupted by objecting to the form of this question. The trial court sustained the objection and
instructed the jury to disregard it, but declined to grant a mistrial. The State then asked, "Have you heard
that he has had to be placed outside of his home as a young man because of his erratic and unmanageable
behavior?" Even if the sharp distinction from Webber remains vital, the prosecutor did not ask (in the
interrupted question) about a bad act by Carpenter; when interrupted, he had asked only about awareness
of his placement in a foster home. Placement in foster care does not necessarily imply any wrongdoing on
Carpenter's part. The trial court's instruction to disregard cured any harm from the phrasing of the
aborted question. We overrule point seventeen.

 By points of error two through five, Carpenter challenges the allowance of questions
regarding whether witnesses had heard he had been arrested for resisting arrest. This evidence was
relevant because wrongful resistance to police conflicts with his stated good reputation for peace and
quietude. Because his resisting arrest at another time does not lead to the conclusion that he assaulted
Lynch, the risk of unfair prejudice does not substantially outweigh the probative value. 

 Carpenter also challenges the admission of this evidence because the arrest was not a final
conviction for a felony or misdemeanor of moral turpitude. Because he made this same objection to all
eighteen bits of testimony at issue, we will deal with these objections collectively after addressing the
substance of each bit of testimony. We refrain from disposing of the points of error until then.

 He challenges the allowance of questions regarding whether witnesses had heard he had
been arrested for carrying a prohibited weapon by points six through ten. The conflict between carrying
a prohibited weapon and a reputation for peace and quietude is less clear than it is with resisting arrest; one
could peacefully and quietly carry a weapon. We cannot say that there is no connection, 
however--particularly since the weapon was a prohibited one--so we conclude that the court did not err
by finding it relevant to the witnesses' knowledge of Carpenter's reputation. An indication that he carried
a prohibited weapon does not create much risk of unfair prejudice in this case because this offense did not
involve the use of a regulated weapon. The minimal risk of unfair prejudice does not substantially outweigh
the relevance.

 Carpenter challenges by points eleven through sixteen the allowance of questions regarding
whether witnesses had heard he had previously assaulted Lynch. He contends on appeal that the court
erred by allowing these questions because there was no evidence that the assaults had occurred and
because the evidence was inadmissible. Not only did he waive the "no evidence" contention by failing to
raise it at trial, Lynch testified outside the presence of the jury that he previously had broken her finger,
twisted her arm, and inflicted damage to her property. His challenge to the admissibility of the evidence
also fails. The questions directly challenged the validity of his good reputation for peace and quietude. The
questions injected prejudicial inferences of prior assaults, but the extent of that prejudice was tempered by
Lynch's insistence that the instant offense was more intense than any previous encounter. We cannot say
that the court erred by concluding that the constrained risk of unfair prejudice did not substantially outweigh
the probative value.

 By points of error eighteen and nineteen, he challenges the allowance of the question
regarding whether witnesses had heard that he was placed outside of his home (in foster care) as a youth
for erratic and unmanageable behavior; by point twenty he challenges the allowance of a question regarding
whether a witness had heard he was institutionalized for the same cause. Erratic and unmanageable
behavior is inconsistent with a good reputation for peace and quietude, though the relevance of such
behavior as a youth is somewhat diminished when it concerns a man at least twenty-seven years old. We
nonetheless conclude that the trial court did not err by deciding that the evidence retained probative value
that was not substantially outweighed by the risk of unfair prejudice.

 Carpenter's repeated objection that none of these questions to the reputation witnesses
dealt with a final conviction is meritless. His choice of language indicates that this objection derives from
Texas Rule of Criminal Evidence 609(a), which limits impeachment by evidence of conviction to final
convictions for felonies or crimes involving moral turpitude. Rule 609 governs attacks on a witness's
credibility by showing that the witness has been convicted. The objections also might have had merit if the
State had attempted to use the questions to attack Carpenter directly. Instead, as explained in Rutledge,
the State used these questions to attack the credibility of the witnesses and the weight to be given their
testimony. See 749 S.W.2d at 52-53. We are cited to and find no authority that the State is limited to
using final convictions for particular offenses for this purpose. We conclude that this objection does not
describe a basis to exclude this evidence. We overrule points two through sixteen and eighteen through
twenty.

 Carpenter contends by his remaining two points of error that the State's jury argument
harmed him. Acceptable jury arguments include summation of the evidence, reasonable deductions from
the evidence, answers to the argument of opposing counsel, and a plea for law enforcement. Todd v.
State, 598 S.W.2d 286, 296-97 (Tex. Crim. App. 1980). Jury argument that departs from these themes
will not constitute reversible error unless, in light of record as a whole, it is extreme or manifestly improper,
violates a mandatory statute, or injects new facts harmful to the accused. Id. at 297. Carpenter challenges
sections of argument at guilt/innocence and at punishment. In both instances, the court sustained his
objection to the argument and instructed the jury to disregard it. He contends that the court erred by
denying his motion for mistrial in each instance.

 By point twenty-one, Carpenter contends that the following jury argument at guilt/innocence
prejudicially referred to the expectations of the community for a particular result:


You know, Mr. Hurley in voir dire talked about the rights of American citizens, and those
are important rights. And the citizens of Bell County have a right to have their laws
enforced. It doesn't matter whether you think this is the crime of the century, and we're
not saying it is the crime of the century, but the thing is the law says you can't do it and if
you do it, and the evidence proves you did it, then you're found guilty. And that's a right
that the people of Bell County have to expect from their jurors.


(Emphasis added.) Carpenter focuses on the last sentence to support his argument. We, however, believe
that the critical passage is the emphasized phrase that immediately precedes that sentence. The emphasized
phrase is conditional. It requires that the defendant commit the crime and that the evidence prove that
commission before the expectation of conviction arises. The prosecutor did not assert that the people of
Bell County expected a conviction in this case. This was an allowable plea for law enforcement. The trial
court, after striking the argument and instructing the jury to disregard it, did not err by denying the motion
for mistrial. We overrule point twenty-one.

 Carpenter contends by point twenty-two that, when arguing against probation at the
punishment phase, the prosecutor infringed on his right to a presumption of innocence and to plead not
guilty with the following argument:


The law, Mr. Hurley says, will be over his head, that he'll have the penitentiary over his
head. It was over there on April 15, too; not just the law that's written down in that penal
code that you have the charge about, but the law of common decency that says that we
don't attack each other. That was there on April 15th and he didn't give a flip about any
one of it because it's not his fault. Never once has he accepted responsibility for what he
did.



(Emphasis added.) The court of criminal appeals has stated that the defendant's choice to plead not guilty
should not be used against the accused. Overstreet v. State, 470 S.W.2d 653, 655 (Tex. Crim. App.
1971). In Overstreet, the defendant testified at punishment, maintaining her innocence and requesting
probation. Id. The prosecution responded in argument by asserting that defendant's refusal to admit guilt
was a barrier to rehabilitation. Id. The court of criminal appeals, though disliking the argument, found no
reversible error. Id. More recently, the second court of appeals, reviewing a similar argument at
punishment, wrote, "We interpret the argument as a comment on appellant's unrepentant attitude as
evidenced by his testimony at trial. The present attitude of the appellant, with respect to the crime which
the jury has found that he committed, is relevant to the issue of punishment." Koffel v. State, 710 S.W.2d
796, 805 (Tex. App.--Fort Worth 1986, pet. ref'd). The emphasized argument in this case did not
directly infringe on the presumption of innocence and right to plead not guilty because, by the punishment
phase, Carpenter already had pled not guilty under a presumption of innocence, but nevertheless had been
found guilty. The argument did not inject new facts into the case but merely characterized Carpenter's
testimony. We conclude that the trial court's instruction to strike was sufficient to erase any harm from the
argument. The court did not err by denying the motion for mistrial. We overrule point twenty-two.

 We affirm the judgment.



Before Justices Powers, Jones and Kidd

Affirmed

Filed: May 1, 1997

Do Not Publish



 sustained his
objection to the argument and instructed the jury to disregard it. He contends that the court erred by
denying his motion for mistrial in each instance.

 By point twenty-one, Carpenter contends that the following jury argument at guilt/innocence
prejudicially referred to the expectations of the community for a particular result:


You know, Mr. Hurley in voir dire talked about the rights of American citizens, and those
are important rights. And the citizens of Bell County have a right to have their laws
enforced. It doesn't matter whether you think this is the crime of the century, and we're
not saying it is the crime of the century, but the thing is the law says you can't do it and if
you do it, and the evidence proves you did it, then you're found guilty. And that's a right
that the people of Bell County have to expect from their jurors.


(Emphasis added.) Carpenter focuses on the last sentence to support his argument. We, however, believe
that the critical passage is the emphasized phrase that immediately precedes that sentence. The emphasized
phrase is conditional. It requires that the defendant commit the crime and that the evidence prove that
commission before the expectation of conviction arises. The prosecutor did not assert that the people of
Bell County expected a conviction in this case. This was an allowable plea for law enforcement. The trial
court, after striking the argument and instructing the jury to disregard it, did not err by denying the motion
for mistrial. We overrule point twenty-one.

 Carpenter contends by point twenty-two that, when arguing against probation at the
punishment phase, the prosecutor infringed on his right to a presumption of innocence and to plead not
guilty with the following argument:


The law, Mr. Hurley says, will be over his head, that he'll have the penitentiary over his
head. It was over there on April 15, too; not just the law that's written down in that penal
code that you have the charge about, but the law of common decency that says that we
don't attack each other. That was there on April 15th and he didn't give a flip about any
one of it because it's not his fault. Never once has he accepted responsibility for what he
did.



(Emphasis added.) The court of criminal appeals has stated that the defendant's choice to plead not guilty
should not be used against the accused. Overs