# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00022-CR

**Roderick Demetry Reeders, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF BELL COUNTY, 264TH JUDICIAL DISTRICT
## NO. 52,477, HONORABLE MARTHA J. TRUDO, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Roderick Demetry Reeders was convicted by a jury of indecency with a child and sentenced by the trial court to thirty-five years' imprisonment. He appeals, complaining in one issue that the trial court erred in allowing the State to cross-examine his mother regarding a prior conviction. We affirm the judgment.

Appellant was accused and convicted of touching the breasts of a fourteen-year-old girl, a friend of his stepdaughter, when she spent the night at his house. After the State rested, appellant called Detective Randall Edds, who testified that in the 1990s, appellant had assisted in several narcotics investigations, acting as an informant and testifying against several defendants. Edds testified that appellant was generally reliable and truthful in those interactions. Appellant then called his mother, Annie Harris, and asked:

Q. Now, your son has been in jail on these charges since about December of 2001, right?

A. Yes.

Q. Today makes about 834 days he has been in jail on this stuff, right?

A. Yes. Yes.

Q. Is he the kind—does he have the kind of character that would mess with a little child like this?

A. No.

Q. Have you ever in your life heard of him doing anything like this to anybody?

A. No.

On cross-examination, the State informed appellant and the trial court that it intended to explore appellant's prior convictions, arguing that appellant had opened the door to those questions with Edds's testimony about appellant's assistance in the drug investigations and Harris's testimony that appellant had been in jail for more than 800 days.[1] The State argued that the evidence of the prior convictions was necessary to dispel the impression that appellant had been in jail for more than two years on the indecency charges, instead of, at least in part, a parole hold related to the earlier robbery conviction. Appellant argued that use of the prior conviction was improper impeachment and that the questions he asked of his mother inquired into a "specific character trait,

---

[1] At the time the instant charges were filed, appellant was on parole for a 1996 robbery conviction. After the charges were brought, a parole revocation warrant, also known as a "blue warrant" or "parole hold," was issued, with the result that appellant was not allowed to obtain bond. Appellant therefore remained in jail from the time of his arrest sometime in 2001 through trial in October 2003. *See* Tex. Gov't Code Ann. §§ 508.251-.254 (West 2004) (if arrested for subsequent offense, parolee may be held on warrant until facts surrounding alleged offense are determined).

and that was, did she know of him doing anything sexually molesting to anybody, particularly children."

The trial court allowed the State to ask whether Harris knew about appellant's robbery conviction and parole hold, and the following exchange took place:

Q. Ms. Harris, are you aware that your son Roderick Demetry Reeders was convicted of the offense of robbery here in Bell County on August the 5th, 1996 and received a ten-year sentence for that?

A. Yes.

Q. And are you aware that there is a parole hold based on that offense holding him in jail and has been since December the 14th of 2001?

A. Yes.

After Harris's testimony, appellant took the stand to testify, in part explaining his earlier conviction and his struggles with drug abuse and addiction. He testified that the robbery conviction arose when he drove a car for someone else who robbed a store. At the time of the robbery, he was addicted to drugs. Appellant's attorney also asked him about an earlier conviction from 1990 for drug possession, and appellant then testified that while he was an informant for Edds, he testified against a friend of the complainant's mother. He testified that the complainant's allegations were false and said that the only reason he could imagine for her allegations was retaliation. The State then questioned appellant extensively about his history of drug use in the early 1990s and his work with Edds, and then asked appellant a series of questions, attempting to rebut appellant's assertion that he was only the driver and did not commit the robbery itself. Part of appellant's closing statement made the argument that the charges must be false because he would not have molested the

3

complainant with his stepdaughter and mother nearby and while on parole because he was trying very hard to comply with his parole conditions. The State briefly referred to the robbery conviction, asserting that appellant's version of the events surrounding the robbery kept changing.

On appeal, appellant argues that "the only character trait in issue" was his mother's opinion that appellant would not "mess with a little child like this." He argues that his robbery conviction was irrelevant and that the State's questioning forced him to take the stand to explain the circumstances surrounding the robbery conviction. Appellant argues he was harmed by this error, as evidenced by a note sent by the jury during deliberations, asking whether it should only consider the evidence of the night of the alleged offense "or the character issue." The State argues that the questions asked of Harris were proper to dispel any false impression left by her testimony on direct examination about appellant's long stint in jail before trial. The State further argues that the issue of character was raised when appellant asked his mother if he had "the kind of character that would mess with a little child like this" because appellant did not limit his question to sexual activity. The State also asserts that because appellant took the stand to explain his prior conviction, he waived any error from the questions asked of his mother regarding his prior conviction. Appellant and the State both spent considerable time discussing appellant's history with drugs and work as an informant, with appellant arguing that his work as an informant made him a target for retaliation by the complainant and her mother many years later and the State arguing that appellant's drug history, prior convictions, and work as an informant showed that he was not truthful.

A witness who testifies about a defendant's good character may be cross-examined with relevant and specific instances of misconduct that might affect the witness's opinion. Tex. R.

4

Evid. 405(a).  Character evidence can be elicited either through a witness's opinion testimony or by testimony about a defendant's reputation in the community.[2]  *Wilson v. State*, 71 S.W.3d 346, 350 (Tex. Crim. App. 2002).  Although a defendant's tendencies towards pedophilia or sexual abuse of a child are not "true *character* trait[s]," a defendant may bring forth evidence about "the more general character trait for 'safe and moral treatment of children.'"  *Wheeler v. State*, 67 S.W.3d 879, 882 n.2 (Tex. Crim. App. 2002).  To "proffer evidence of his good character (or propensity) for moral and safe relations with small children or young girls," the defendant must lay a predicate that the witness is familiar with the defendant's reputation or the facts on which the witness's opinion is based, and the witness may testify only as to his or her "opinion concerning this character trait or [the defendant's] general reputation in the community concerning this trait."  *Id*. at 882-83 n.3.  If a defendant makes such a showing and presents opinion or reputation testimony as to his character for moral and safe relations with children, the witness may be cross-examined on specific instances of bad conduct if the bad conduct is "*relevant to the character traits at issue*" and has a basis in fact.  *Wilson*, 71 S.W.3d at 350-51 (emphasis added).

The State spends a great deal of time attempting to explain how appellant's question to his mother of whether appellant would "mess with a little child like this" should be considered a question about appellant's character in general.  The State parses out "mess with," citing to cases

[2]  Rule 405 does not distinguish between opinion and reputation testimony.  *Wilson v. State*, 71 S.W.3d 346, 350 n.4 (Tex. Crim. App. 2002); *see* Tex. R. Evid. 405.  However, "the better practice is to follow the traditional method of impeaching opinion witnesses with 'did you know' questions and reputation witnesses with 'have you heard' questions."  *Wilson*, 71 S.W.3d at 350 n.4; *see Rutledge v. State*, 749 S.W.2d 50, 52-53 (Tex. Crim. App. 1988) (pre-rule 405 case discussing when "have you heard" questions may be asked of character witnesses).

in which the phrase is used to refer to non-sexual behavior, and then explains that a "child like" the complainant can be "messed with" in any number of ways, from assaultive conduct like robbery or being pushed to the ground to sexual conduct such as was at issue in this case. We have reviewed the State's argument and believe it to be disingenuous. Read in context, the question asked of appellant's mother, "does he have the kind of character that would mess with a little child like this," clearly inquired as to whether she believed her son had the kind of character that would lead him to engage in sexual behavior with a child and was immediately followed by the question, "Have you ever in your life heard of him doing anything like this to anybody?" "Mess with," as used in the question, clearly referred to the kind of behavior at issue, that is, inappropriate sexual behavior, as further shown by the follow-up question about whether Harris had ever heard of appellant doing "anything like this" with anyone else. In other words, appellant's question is more reasonably read as asking whether appellant would "mess like this" with a child, not whether he would "mess with," in a general assaultive way, a "child like" the complainant. Therefore, appellant's question inquired into Harris's opinion as to appellant's character for "moral and safe relations with small children or young girls," not his general character. *See Wheeler*, 67 S.W.3d at 882. Because appellant's question inquired about this particular trait, the State's questions related to his robbery conviction were not relevant to the trait at issue and were not proper impeachment questions. *See Wilson*, 71 S.W.3d at 351; *see also Rutledge v. State*, 749 S.W.2d 50, 53 (Tex. Crim. App. 1988) (pre-rule 405 case in which witness testified about "personal and work relationship" with defendant; "'have you heard' questions concerned [defendant's] reputation for illegal sexual conduct with children and did not refer to acts inconsistent with the character traits that the witness testified about").

6

However, although the State's questions about appellant's robbery conviction were not relevant to the character trait testified to by Harris, any error in those questions was harmless because, as discussed below, evidence of the robbery conviction was properly admitted later, during appellant's testimony and cross-examination. Appellant took the stand and testified about the robbery, explaining that he was struggling with drug addiction at the time and that he had only driven the car and did not commit the robbery himself. Thus, the State argues, appellant waived any error, pointing to the general rule that a defendant waives any error in the admission of evidence if the same evidence is offered at another point in trial by the defendant himself.[3] *See Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998). However, an exception to that rule arises when the defendant's testimony is impelled by the State's introduction of the inadmissible evidence. *Id.* at 718-19. In such a case, the State must prove that it did not impel the testimony, and we look for (1) evidence that the defendant's attorney would not have called the defendant to testify but for the overruling of the objection to the evidence; (2) evidence that the defendant would have testified in the same manner but for the evidence; (3) other evidence of guilt and the strength of that evidence; and (4) other evidence to which the defendant did not object that would have induced the same testimony from the defendant. *Id.* at 719 (quoting *Sherlock v. State*, 632 S.W.2d 604, 607 (Tex. Crim. App. 1982)).

---

[3] The State also argues that appellant's questions about how long he had been in jail "on these charges" and "on this stuff" gave the impression that he had been in jail for about two years due solely to the indecency charges. *See Wheeler v. State*, 67 S.W.3d 879, 885 (Tex. Crim. App. 2002) ("The State's cross-examination was also permissible to correct the false impression that Ms. Brumley's testimony clearly left with the jury concerning appellant's risk of abuse.").

We must therefore determine whether appellant's testimony about the robbery conviction was impelled by the State's improper questions asked of Harris. Appellant testified at length about the robbery and its surrounding circumstances. However, his testimony went far beyond explaining the robbery conviction. Appellant also explained his role in Edds's investigations and the resulting convictions, testified that he did not touch the complainant, described his version of the evening's events, and asserted that he believed he had been set up by the complainant's mother, who appellant asserted might still be harboring a grudge against him for his role in sending a friend of hers to jail. It does not appear that appellant did not intend to testify and instead was forced to take the stand to explain the robbery conviction, nor does it appear that appellant's testimony would have been very different had the State not asked Harris about the robbery conviction. Finally, once appellant took the stand to testify, the State could have impeached his testimony by introducing evidence that he had been convicted of robbery, a felony offense. Tex. R. Evid. 609(a) (evidence of witness's prior conviction "shall be admitted . . . if the crime was a felony or involved moral turpitude" and probative value outweighs prejudicial effect). Thus, even if the State had not raised the issue of appellant's robbery conviction during Harris's testimony, the conviction was a proper issue to be explored during appellant's testimony. We therefore hold that any error in the State's questions of Harris was waived by appellant's later testimony. Furthermore, even if we assume that appellant did not waive his complaint and that it was error to allow the State to ask Harris its robbery-related questions, the error was harmless.

To mandate reversal, a non-constitutional error must affect a defendant's substantial rights. Tex. R. App. P. 44.2(b). A substantial right is affected if an error had "a substantial and

injurious effect or influence in determining the jury's verdict." *Lopez v. State*, 990 S.W.2d 770, 777 (Tex. App.—Austin 1999, no pet.) (quoting *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)). If evidence is erroneously admitted, we must determine whether it actually contributed to the jury's verdict. *Id*. at 777-78. In conducting a harm analysis, we review the record and ask whether the error had more than a slight influence on the verdict. *Id*. at 778.

On the night in question, the complainant, S.L., spent the night at appellant's house with her friend, appellant's stepdaughter, S.S. The two girls and appellant were in a bedroom watching a movie, and S.S. testified that she fell asleep for a few minutes while lying on appellant's legs; S.L. was lying on the floor and S.S. and appellant were on the bed. S.S. testified that as she was drifting off to sleep, she heard appellant saying something about how she and S.L. should not let boys touch them. S.S. did not hear anything or notice anything that made her believe something had happened between S.L. and appellant. She also testified that the next morning, S.L., who has asthma, asked to go home earlier than usual because her chest was hurting and looked like she might cry. S.L. testified that during the movie, appellant talked about "[h]ow boys are immature and they don't know how to touch girls in the right spots" and that later, while S.S. was sleeping, he put his hands under S.L.'s shirt and bra as she sat on the floor. In the morning, she asked to go home, telling S.S. it was because her asthma was bothering her.

Appellant testified about his work with Edds as an informant and witness and said he helped send at least one of S.L.'s mother's friends to jail. Appellant also testified at length about his struggles with drug addiction and his history of drug abuse and drug dealing. Appellant's robbery conviction was mentioned when appellant explained the circumstances surrounding the

9

robbery. He testified that he was only the driver for the robbery and denied committing the robbery, saying that the person who committed the robbery borrowed appellant's jacket and hat to commit the robbery. Appellant was on parole for that conviction and wearing a leg monitor on the night in question. Appellant denied touching S.L., saying, "I sure got enough sense to know with a leg monitor on if I reach down there and touch this child, I could get life in prison . . . . I would have to be crazy to do that." Appellant believed that S.L.'s mother had set him up in retaliation for his work as an informant and witness.

Appellant points to a note sent by the jury during deliberations, which asked, "Do we only consider evidence only of Apr 29, 2001 [the date of the alleged offense] or the character issue?" He argues that the jury's note is evidence that he was harmed by the questions about the robbery conviction. We disagree. Viewed as a whole, the record contains significant evidence about appellant's character and history with drug addiction, dealing, and use. Appellant admitted to using and dealing drugs and that he was involved in the robbery, although he testified that his friend committed the offense. Appellant also testified about his work with Edds as an informant and testifying witness. He testified that he did not touch S.L., and asserted that S.L.'s mother had set him up to get revenge for his work with Edds. The State argued that appellant was not a truthful person, as evidenced by his criminal history and his decision to act as an informant. The robbery conviction was discussed mostly during the State's cross-examination of appellant, when the State pointed out inconsistencies in appellant's testimony and attempted to show that appellant committed the robbery himself and then lied about it during this trial. It is also important to note that evidence of the

robbery conviction would have been admitted during appellant's testimony even if the State had not raised the subject with Harris. *See* Tex. R. Evid. 609(a).

We hold that the two questions asked of Harris by the State, when viewed in the context of the entire record, could not have had more than a slight impact on the jury's verdict and did not affect appellant's substantial rights. *See Lopez*, 990 S.W.2d at 777-78.

We overrule appellant's issue on appeal and affirm the trial court's judgment.

_____

David Puryear, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:   September 14, 2005

Do Not Publish