**Joe Carlton LANCASTER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–87–00317–CR.**

Court of Appeals of Texas, Dallas.

July 14, 1988.

**494**

Dorothy H. Shead, Dallas, for appellant.

Yolanda M. Joosten, Dallas, for appellee.

Before DEVANY, STEWART and HECHT, JJ.

HECHT, Justice.

A jury convicted Joe Carlton Lancaster of aggravated robbery and sentenced him to life imprisonment. We overrule Lancaster's two points of error and affirm the judgment of the trial court.

### First Point of Error

Lancaster first complains that the trial court erred in allowing the State to cross-examine his character witness about criminal conduct with which Lancaster was charged but of which he had not yet been convicted. During the punishment phase of his trial, Lancaster called a character witness, Don Richardson, a Mesquite Fire Department captain, who testified that Lancaster was not a violent person and was not a continuing danger to society. On cross-examination, the prosecutor asked Richardson what he knew about four specific incidents of criminal conduct by Lancaster:

Q [By the Prosecutor]: Okay. Now, Mr. Richardson, did you know that on November 14th 1986, in Dallas County the defendant went into a building, a 7–Eleven that was not a portion of building that was open to the public and was caught in the middle of stealing cigarettes from that 7–Eleven on November 14th 1986?

A [By Richardson]: I wasn't aware of it till just now when Miss—told me outside the courtroom.

Q: Then you were made aware of it?

A: Right.

Q: Is your opinion still that this defendant is not a continuing threat to society or danger to society?

A: Yes, ma'am.

Q: Okay. Did you know that on November 28th 1986, this defendant, while in the course of committing theft of some video tapes from a Target store, used his automobile to knowingly and intentionally cause bodily injury to an individual in the parking lot?

A: I never heard that.

Q: Never heard that one? If you had heard that would that change your opinion as to his being a continuing danger to society or of a violent nature?

A: If I knew he did it, if I had heard.

Q: If you knew he did it, would that change your opinion?

A: Beg your pardon?

Q: If you knew he did it, would that change your opinion?

[Defense Counsel]: Objection, Your Honor, that's speculation.

THE COURT: Overruled.

A: Yes, I guess it would.

Q: In that instance you might think what? That he's violent or might be a continuing danger to society?

A: Right.

Q: Did you also know that on December 10th 1986, during the course of committing theft, this defendant went into a Vickers Station on Garland Road in Dallas County, Texas, and placed the complainant in fear of imminent bodily injury or death and took money from that individual?

A: No, I never heard that.

Q: Didn't hear about that one? If you had heard about that, would that change your opinion as to his being violent or a continuing danger to society?

[Defense Counsel]: Your Honor, may I have a continuing objection?

THE COURT: You may.

A: If I had known it, if I had heard it from someone like his father; his father said he knew it was so, it would change my opinion.

Q: Did you also know on December 17th 1986, again another Vickers Station, the defendant while in the course of committing theft of a complainant there, again of money, placed that complainant in fear of imminent bodily injury and death?

A: No, I had not heard that.

Q: Would that change your opinion if you heard that, as far as the defendant's being violent or being a continuing danger to society?

A: Yes.

Lancaster's only objection to this cross-examination, other than the speculation objection noted above, was made prior to the testimony outside the presence of the jury as follows:

[Defense Counsel]: I would like to object to allowing the State to question this witness [Richardson] as to any specific incidents. I do not believe the defense has opened the door to a "do you know" type question in this particular case. And I believe that there is danger of opening the door to extraneous uncharged conduct whose prejudicial effect would outweigh any possible relevancy.

Lancaster now contends that by the questions set out above the prosecutor improperly implied that the incidents inquired about had actually occurred when in reality Lancaster was only charged in the incidents and had not yet been convicted.

Before Texas Rule of Criminal Evidence 405(a), only evidence of reputation was admissible to prove character; personal opinion was not admissible. *See, e.g., Green v. State,* 679 S.W.2d 516, 517 (Tex.Crim.App. 1984); *Beecham v. State,* 580 S.W.2d 588, 590 (Tex.Crim.App.1979). A character witness could testify only about what he had heard, not about what he knew or opined. *See Pemberton v. State,* 601 S.W.2d 333, 337 (Tex.Crim.App.1980); *Brown v. State,* 477 S.W.2d 617, 620 (Tex.Crim.App.1972).

■ Now, however, under Texas Rule of Criminal Evidence 405(a), a defendant may offer both reputation and opinion evidence of his good character, and character witnesses may be cross-examined as to relevant specific conduct. Inasmuch as a character witness may now testify both as to what he knows and as to what he has heard, it follows, and Lancaster seems to concede, that the witness may, on cross-examination, be asked "do you know" questions as well as "have you heard" questions. *See Government of Virgin Islands v. Roldan,* 612 F.2d 775, 780 (3rd Cir.1979), *cert. denied,* 446 U.S. 920, 100 S.Ct. 1857, 64 L.Ed.2d 275 (1980) (applying the substantially similar Federal Rule of Evidence 405(a)). Lancaster nevertheless urges that no question is proper which implies that

conduct which has only been alleged and not proved has actually occurred.

■ The right to cross-examine a character witness on specific instances of a defendant's conduct is subject to two limitations: first, there must be some factual basis for the incidents inquired about; and second, those incidents must be relevant to character traits at issue in the trial. *See United States v. Nixon*, 777 F.2d 958, 970 (5th Cir.1985). The foundation for inquiring into the specific instances of conduct must be laid outside the jury's presence. *Id.* The first limitation is the basis of Lancaster's complaint. In essence, he argues that the prosecutor failed to show any factual basis for the incidents inquired about.

■ The State laid a factual predicate for three of the four specific incidents—those on November 14 and 28, and December 10—with the testimony, outside the jury's presence, of the complaining witnesses in those incidents. As to the fourth incident referred to by the prosecutor as having occurred on December 17, although the State did not establish a factual basis for that incident, Lancaster did not object to the reference on this basis. Lancaster has therefore waived any right to complain of this deficiency on appeal. Furthermore, even if Lancaster were allowed to raise this complaint without a proper objection at trial, under the circumstances of this case, any error in the prosecutor's referring to one incident for which no factual basis had actually been laid after questioning Richardson about three other incidents which were based in fact, was not calculated to and did not harm Lancaster.

The questions Lancaster complains of were clearly relevant to Richardson's testimony that Lancaster was an honest, nonviolent businessman. The State's cross-examination of Richardson did not exceed the scope permitted by rule 405(a). Lancaster's first point of error is therefore overruled.

### Second Point of Error

■ Lancaster also contends that the trial court erred in giving the jury the parole law instruction required by article 37.07, section 4*(b)*, Texas Code of Criminal Procedure. Since the trial, the court of criminal appeals has held that a similar instruction required by art. 37.07, § 4*(a)*, is unconstitutional. *See Rose v. State*, 752 S.W.2d 529, 537 (Tex.Crim.App.1987) (not yet reported). Inasmuch as the two instructions are virtually identical, we conclude that both suffer the same constitutional infirmity.

The court of criminal appeals has recently held that whether the erroneous inclusion of a parole instruction in a jury charge harmed an appellant must determined under Texas Rule of Appellate Procedure 81(b)(2). *See Rose v. State*, No. 193–87, op. at 3 (Tex.Crim.App. June 15, 1988) (opinion on rehearing) (not yet reported). Rule 81(b)(2) states:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court shall reverse the judgment under review, unless the appellate court determines beyond a reasonable doubt that the error made no contribution to the conviction or to the punishment.

We must therefore analyze the record in light of this standard.

The complaining witness identified Lancaster as the man who entered the gas station where he worked and robbed him at gunpoint. The witness testified that he had an opportunity to observe Lancaster at close range for at least three minutes, and that Lancaster had a gun which he pointed at the witness' forehead, threatening to "splatter" his brains against the wall. The penitentiary packets admitted during the punishment phase proved true the enhancement paragraphs of the indictment. Lancaster himself testified about three prior misdemeanor convictions and four prior felony convictions. There was thus ample evidence to support the jury's finding on punishment. *See* TEX.PEN.CODE ANN. § 12.42 (Vernon Supp.1987). The prosecutor mentioned but did not stress the parole law instruction.

Viewing the record, we find beyond a reasonable doubt that the charging error made no contribution to the punishment assessed. Consequently, we overrule Lancaster's second point of error.

AFFIRMED.