Ronald Jerome **QUIROZ**, Appellant,

v.

The **STATE** of Texas, State.

No. 2–88–053–CR.

Court of Appeals of Texas, Fort Worth.

Feb. 2, 1989.

Jim Shaw, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Helen T. Dhooghe, Asst. Fort Worth, for the State.

Before WEAVER, C.J., and SPURLOCK and KELTNER, JJ.

## OPINION

KELTNER, Justice.

This is an appeal from Ronald Jerome Quiroz's conviction of aggravated robbery with serious bodily injury pursuant to TEX. PENAL CODE ANN. sec. 29.03(a)(1) (Vernon 1974). Quiroz entered a plea of guilty and filed a motion for probation. Nonetheless, the jury assessed punishment at fifteen years imprisonment in the Texas Department of Corrections.

Quiroz does not challenge the sufficiency of the evidence. Instead, in a single point of error, he argues he was denied effective assistance of trial counsel. Specifically, Quiroz argues his attorney failed to object to alleged improper questions and evidence and furthermore failed to object to allegedly improper jury argument.

We disagree and affirm the judgment of the trial court.

The victim was a leasing agent at the Royale Orleans South Condominiums. Quiroz called on her, pretending to seek an apartment to lease. He told her he was an engineer at General Dynamics and was looking for a new apartment because he was dissatisfied with his present one. At trial, Quiroz admitted his statements to the victim were false.

Not knowing Quiroz was lying to her, the victim showed Quiroz an apartment in the

complex. The victim testified that Quiroz behaved normally until they entered the bedroom of the apartment. As she reached to open the window blind, Quiroz grabbed her and threw her to the floor. He then straddled her and reached for her neck. The victim screamed and began fighting with Quiroz as she believed he was attempting to kill her. Quiroz, who weighed 220 pounds, restrained the victim and began choking her. The victim lost consciousness and when she came to, Quiroz was standing over her. He then began to kick her with his cowboy boots.

The victim was seriously injured during this beating. Two of her ribs and her right clavicle were broken. She also suffered bruises over most of her torso. The beating was so severe that her clavicle did not heal properly. At the time of trial, the pieces of the clavicle had still not joined. The victim's doctor testified that an additional operation and possible bone graft would be necessary in the future.

After the beating, Quiroz removed a gold ring from the victim's finger. However, he did not take several other items of equally valuable gold jewelry, including a fourteen carat bracelet and necklace.

The victim testified that immediately after the attack, she became afraid that Quiroz had sexually assaulted her while she was unconscious. However, she further stated she did not know whether any attack had occurred. Her doctor testified that he knew of no medical evidence of a sexual attack.

In this appeal, Quiroz contends his trial counsel was ineffective because he continuously failed to object and to request limiting instructions on alleged improper questions and he failed to object to the State's alleged improper jury argument.

■ Because Quiroz's complaint of ineffective assistance of counsel deals with the punishment phase of the trial, we must use the standard enunciated in *Ex parte Duffy,*

607 S.W.2d 507 (Tex.Crim.App.1980). *See Ex parte Cruz,* 739 S.W.2d 53, 57–58 (Tex. Crim.App.1987).[1] In *Ex parte Duffy,* the court held that effectiveness of counsel was to be judged by the standard of "reasonably effective assistance of counsel." *Ex parte Duffy,* 607 S.W.2d at 516. (The constitutional right to counsel does not mean errorless counsel or counsel whose competency is to be judged by hindsight. *Mercado v. State,* 615 S.W.2d 225, 228 (Tex.Crim.App. [Panel Op.] 1981); *see also Wilson v. State,* 730 S.W.2d 438, 443 (Tex. App.—Fort Worth 1987, no pet.)). Under this standard, the sufficiency of an attorney's assistance is gauged by the totality of his representation of the accused. *Passmore v. State,* 617 S.W.2d 682, 686 (Tex. Crim.App. [Panel Op.] 1981); *Van Sickle v. State,* 604 S.W.2d 93, 98 (Tex.Crim.App. [Panel Op.] 1980) (opinion on reh'g). Additionally, an allegation of ineffective counsel will be sustained only if it is firmly founded and the record affirmatively demonstrates counsel's alleged ineffectiveness. *Ex parte McWilliams,* 634 S.W.2d 815, 819 (Tex.Crim.App.1982).

Quiroz first complains his trial counsel failed to object to the State's improper questioning of Quiroz's character witnesses on cross-examination.

During the punishment stage of the trial, Quiroz testified and called two character witnesses, Susan Willingham, his employer, and Leonard Quiroz, his father.

On direct examination, Willingham testified that Quiroz had started work for her three months after the assault. She stated he had proved to be her top salesman, was extremely reliable, and she and her husband were considering him for a managerial position. She also testified that if Quiroz was placed on probation, she would provide him with a job.

On cross-examination, she related that Quiroz often spoke of his child and related that he loved her.

On appeal, Quiroz complains his counsel failed to object to the State's following cross-examination questions of Willingham:

Q. [Prosecutor] And in truth and in fact, did you know that he [Quiroz] abandoned that child and given [sic] that child up?

A. No, sir.

Q. All you really know about the Defendant is what he has told you since July of 1987?

A. All I know is about his work history which is very, very good.

. . . .

Q. [Prosecutor] All you really know about the defendant is what he has told you; is that correct?

A. That's correct.

Q. Did you know about the incident that occurred on April the 29th of 1987, that he is charged with here today?

A. No, I did not.

Quiroz also called his father, Leonard Quiroz, who testified he would stand by his son and "do everything humanly possible to help him." He also stated that Quiroz's daughter had lived with him and Quiroz's mother for the past four years. He testified that Quiroz saw the child three to four times a week and had a loving relationship with the child.

On cross-examination, the State asked Quiroz's father the following question:

Q. [Prosecutor] And, are you aware that the Defendant said, "I don't have a child; that is my niece," denying even the existence of the child?

A. No, sir, not that I know of.

Other witnesses did testify that Quiroz had denied the child was his. In fact, Quiroz on cross-examination admitted that he had denied his paternity of the child. Quiroz complains that his lawyer did not

render effective assistance of counsel because he did not object to these questions. Basically, his complaints fall into two categories.

■ First, Quiroz asserts that Willingham was called as a character witness and it was improper for the State to ask her "Have you heard" questions. We disagree.

Before the Rules of Criminal Evidence were adopted, the Court of Criminal Appeals held that the character of the accused could only be proved by reputation testimony. *See Green v. State*, 679 S.W.2d 516, 517 (Tex.Crim.App.1984). As a result, a character witness could only testify to what he had heard about the defendant's reputation rather than about what the witness thought. *See Pemberton v. State*, 601 S.W.2d 333, 337 (Tex.Crim.App. [Panel Op.] 1980).

However, this case law was overruled by the Court of Criminal Appeals' adoption of TEX.R.CRIM.EVID. 405(a).[2] Rule 405(a) allows the character of the defendant to be proved by reputation *or* opinion testimony.

Inasmuch as the character of the defendant may be proved by what the witness has heard and knows, it follows that the witness can be examined and cross-examined by "Do you know" as well as "Have you heard" questions. *Lancaster v. State*, 754 S.W.2d 493, 495 (Tex.App.—Dallas 1988, no pet.). In *accord*, 33 S. GOODE, O. WELLBORN, & M. SHARLOT, GUIDE TO TEXAS RULES OF EVIDENCE: CIVIL AND CRIMINAL sec. 405.2 (Texas Practice 1988).

Second, Quiroz insists the State may not cross-examine character witnesses (Willingham and Quiroz's father) with specific acts of conduct (the assault and denying paternity). We disagree.

2. Rule 405. Methods of Proving Character

(a) Reputation or opinion. In all cases in which evidence of character or trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. Provided however that in order to be competent to testify concerning the character or trait of character of the accused, a witness must, pri-

or to the date of the offense, have been substantially familiar with the reputation of the accused. In all cases where testimony is admitted under this rule, on cross-examination inquiry is allowable into relevant specific instances of conduct.

These rules became effective on September 1, 1986. Quiroz's trial took place in February 1988.

■ Rule 405(a) clearly states that character witnesses may be cross-examined on "relevant specific instances of conduct." The right to cross-examine a character witness on a defendant's specific acts of conduct is subject to establishing a two-part predicate: (1) a factual basis for the acts inquired about, proved outside the presence of the jury, unless already properly admitted into evidence; and (2) the acts must be relevant to the character trait at issue. *Lancaster,* 754 S.W.2d at 496.

■ The State laid the two-part predicate for both witnesses. Willingham testified on direct that she would employ Quiroz if he were granted parole and that Quiroz often spoke lovingly of his child. Before cross-examining her by asking if she knew of the facts of the assault, the State proved the assault through the victim and another witness. Before cross-examination about Quiroz's denial of paternity, the State, outside the presence of the jury, put on evidence that Quiroz had denied paternity of his child. Quiroz later admitted he had done so. Therefore, a factual basis was proved for specific conduct. The same predicate was laid before cross-examining Quiroz's father about Quiroz's denial of paternity.

■ Furthermore, the questions asked of Willingham and Quiroz's father were clearly relevant to Quiroz's request for probation. In his request for probation, Quiroz swore he would abide by the terms of probation. One of those terms is that Quiroz agrees to remain employed and support his dependents. Therefore, evidence of his employer's knowledge of his crime and the fact that he had denied his paternity of his child on numerous occasions was admissible. *Wilkerson v. State,* 736 S.W.2d 656, 659 (Tex.Crim.App.1987).

■ Failure to object to testimony that is not objectionable does not constitute ineffective assistance of counsel. *Johnson v. State,* 691 S.W.2d 619, 626 (Tex.Crim.App. 1984), *cert. denied,* 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 152 (1985).

Quiroz next argues that his trial counsel erred by failing to object to questions the State asked of Deborah Davis, Quiroz's former fiancee. The State called Deborah Davis to the stand and asked her questions about Quiroz's reputation for truthfulness. She testified as follows:

Q. [Prosecutor] And, do you know his general reputation for truth and veracity in the community in which he resides?

A. He has no truth about him.

Q. So, you do know his reputation?

A. Yes, bad.

■ Quiroz argues that Davis should not have been allowed to testify as to her opinion of his truthfulness rather than to his reputation for truthfulness.

We disagree. The State established a predicate for the admission of Davis's testimony. Immediately before she testified, Quiroz admitted that Davis knew him as well as anyone.

By taking the stand, the defendant Quiroz put his character and reputation for veracity in issue. As a result, he was subject to impeachment in the same manner as any other witness. *Prescott v. State,* 744 S.W.2d 128, 130 (Tex.Crim.App. 1988). As previously stated, Rule 405(a) allows a competent witness to testify to his or her opinion of the defendant's truthfulness. Any objection that might have been made would have in all probability been overruled.

In his last contention, Quiroz argues he was denied effective assistance of counsel because his attorney failed to object to the State's alleged improper jury argument. Quiroz cites nine instances of an alleged improper jury argument. However, we can summarize them in three basic contentions. First, the State continually argued that, "things are not what they appear." Second, the State argued that Quiroz's real motive for the attack was a sexual assault and not robbery, as he claimed. Third, the State argued on one occasion that probation was not appropriate for a man who, "[t]ells all different kinds of lies and attacks people at random in isolated parts of our county."

■ The purpose of closing argument is to facilitate the jury's proper analysis of

the evidence presented at trial so that it may arrive at a just and reasonable conclusion based on the evidence alone and not on any fact not admitted into evidence. *Campbell v. State*, 610 S.W.2d 754, 756 (Tex.Crim.App. [Panel Op.] 1980). To be permissible, jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Gaddis v. State*, 753 S.W.2d 396, 398 (Tex.Crim.App.1988); *Cannon v. State*, 668 S.W.2d 401, 404 (Tex. Crim.App.1984).

█ Quiroz contends the prosecutor's continual argument that "things are not always as they appear" was an attempt to encourage the jury to look beyond the logical deductions from the evidence and to consider other unspecified acts. In turn, the State argues the phrase was used to remind the jury that although Quiroz appeared respectful, clean-cut, and remorseful in the courtroom, he admitted cleaning up his appearance before trial. Additionally, the State urges the phrase was used to point out that several photographs of the victim taken immediately after the fact did not show the extent of the victim's injuries which were depicted in later photographs.

The theory of Quiroz's defense appears to depict him as a loving father, respectable citizen, and remorseful about the event. Nonetheless, there was evidence that he had denied the paternity of his child, was less than responsible in meeting his obligations to his family and child, and brutally and viciously attacked the victim. This part of the State's argument was both a summation of and a deduction from the evidence.

█ Second, Quiroz complains the prosecutor continually argued that Quiroz's true intent in the assault was to commit an aggravated sexual assault rather than a robbery.

The State answers that the record is "replete" with facts proving that Quiroz's intent was to sexually assault the victim and not simply to rob her. While we disagree with the State's characterization that the evidence was "replete" with references, there is evidence in the record to support the argument.

The victim testified she did not know whether she had been sexually assaulted, but she was afraid that a sexual assault had occurred. Her doctor testified that upon her entry to the hospital, she was afraid she had been sexually assaulted but did not believe she had been so assaulted. However, the State introduced evidence from the victim that she was wearing at least three items of expensive gold jewelry at the time of the attack: a ring, bracelet and necklace. The undisputed evidence is that Quiroz only stole the ring. Additionally, the victim stated that Quiroz's shirt was tucked in neatly before the attack. However, another witness testified that after the attack "his shirt tail was kind of undone" when she saw him running to his truck.

Therefore, the State's argument was a reasonable deduction from the evidence and therefore, permissible.

█ Finally, Quiroz argues that the following argument was improper:

Tell us what you do think ... We need to know what we do ... [when] we catch this kind of man who puts different on [sic] kind of faces.

Tells all different kinds of lies and attacks people at random in isolated parts of our county. What type of punishment does that deserve? We suggest to you that somewhere in the mid-range between 35 and 65 years.

Quiroz complains this argument was prejudicial, outside the record and suggestive of extraneous matters. We disagree. Quiroz admitted lying on a number of subjects, including the pretext used to gain entry to the apartment and the paternity of his child. Additionally, he admitted the brutal attack on the victim occurred in an area which was shielded from public view. Therefore, the State's argument was a proper summation of and reasonable deduction from the evidence. We do not believe the context in which the argument was made would lead the jury to believe the

prosecutor was encouraging them to consider unspecified extraneous offenses. As a result, we believe the argument was proper and any objection Quiroz might have made would, in all probability, have been overruled.

As stated before, failure to object to testimony that is not objectionable does not constitute ineffective assistance of counsel. *Johnson v. State*, 691 S.W.2d at 636.

We must also note that the range of punishment for the charged offense was life or five to ninety-nine years confinement and a possible fine of $10,000. *See* TEX.PENAL CODE ANN. sec. 12.32 (Vernon Supp.1989). Although Quiroz argued for probation, the State asked the jury for a term of confinement of thirty-five to sixty-five years. The jury's finding of fifteen years confinement does not indicate they were overly swayed by any of the State's evidence or arguments.

Furthermore, in determining the totality of the representation, we note that Quiroz's counsel: filed application for felony probation; filed a motion for a hearing to test the qualification of the State's reputation witnesses outside the presence of the jury; filed a motion for Quiroz to obtain medical testing before the trial; actively participated in the selection of the jury; and actively presented evidence at trial. Much of the testimony that Quiroz's counsel elicited from witnesses rebutted the contentions of the State and undoubtedly, had an effect on the jury.

In summation, we find Quiroz has failed to discharge his burden of having the record affirmatively demonstrate the alleged ineffectiveness of counsel's representation.

Further, we hold, considering the totality of the representation, Quiroz's counsel rendered effective assistance of counsel.

We affirm the judgment of the trial court.