TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-96-00738-CR







Jesse Monroe, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF CALDWELL COUNTY, 22ND JUDICIAL DISTRICT


NO. 95-019, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING








 Appellant Jesse Monroe was convicted of three counts of aggravated sexual assault. 
See Tex. Penal Code Ann. § 22.021 (West 1994). The jury assessed punishment at life in prison. 
Appellant presents ten issues for review. We will overrule appellant's issues and affirm the trial
court judgment.


THE CONTROVERSY

 While on parole for the felony offense of burglary of a habitation, appellant was
charged by indictment with sexually assaulting S.A. on the morning of January 11, 1995. On
March 21, 1995, the Board of Pardons and Paroles conducted a hearing to determine if adequate
grounds existed to find that appellant had violated a term of his parole by committing the charged
acts. S.A. gave direct testimony at the hearing; however, before she could be cross-examined,
a representative of the Caldwell County Attorney's Office advised S.A. and other subpoenaed
witnesses not to testify. The witnesses left the hearing. The hearing examiner recommended non-revocation due to a lack of evidence. On April 28, 1995, the Board of Pardons and Paroles voted
for non-revocation pending adjudication.

 When the State continued its criminal prosecution, appellant filed an application for
writ of habeas corpus on June 30, 1995, alleging that he was being prosecuted in violation of the
prohibition against double jeopardy in the Fifth Amendment to the United States Constitution and
the due course of law clause of article 1, section 19 of the Texas Constitution. No hearing was
set on the application. On July 7, 1995, the trial judge rendered an order purporting to issue the
writ and denying the relief requested based on evidence heard by the court during a July 6 hearing
concerning a plea of former jeopardy filed by appellant. Appellant appealed the order. This Court
dismissed the appeal for want of jurisdiction on January 24, 1996, holding that at the July 6
hearing the trial court heard and overruled appellant's special pleas of former jeopardy but did not
hear or consider appellant's application for writ of habeas corpus. See Ex parte Monroe, Nos. 3-95-418-CR, 3-95-419-CR (Tex. App.--Austin Jan. 24, 1996, no pet.) (not designated for
publication).

 The docket sheet indicates that appellant's first jury trial ended in a mistrial on May
28, 1996. A second trial began on July 22, 1996 and resulted in a hung jury. Before the third
trial commenced, appellant filed four additional applications for writ of habeas corpus. (1) The
docket sheet indicates that a hearing was held on October 8 and that the trial court denied appellant
relief, but it is unclear to which application the docket sheet refers.

 Appellant's third trial began on November 12, 1996. S.A. testified that after her
husband left for work on the morning of January 11, 1995, she heard a knock on her front door. 
Before she could answer the door, appellant entered the house, claiming that someone was behind
him with a gun. S.A. testified that appellant pushed her into a corner and told her to take her
clothes off. She refused and told appellant she was pregnant. S.A. testified that appellant then
punched and choked her before sexually assaulting her in the bathroom.

 After the first sexual assault, appellant told S.A. that he had been watching her for
two or three days. He then forced S.A. into her daughter's room, where he sexually assaulted her
again. S.A. testified that appellant then held a pair of scissors to her throat and threatened to kill
her. (2) Appellant then left the victim's home, only to return a short time later. S.A. testified that
upon his return, appellant made her swear that she would never tell anyone what he had done to
her. S.A. testified that appellant then sexually assaulted her in the master bedroom.

 In his defense, appellant admitted to having sex with S.A. but argued that it
occurred in the context of an extramarital affair. Appellant also argued that he was too disabled
to assault S.A. The charge was read to the jury on November 20, and the jury returned a verdict
of guilty on all counts the same day.


DISCUSSION

 In his first point of error, appellant contends that the trial court erred by denying
him the right to fully litigate his claim of double jeopardy before trial. (3) Appellant filed a "Pre-Trial Application for Writ of Habeas Corpus Seeking Relief From Double Jeopardy" on June 30,
1995, almost a full year before the first trial. The record indicates that on July 7 the trial court 
denied the relief requested by appellant. On appeal, this Court did not rule on the merits of
appellant's double jeopardy claim but rather dismissed the cause for lack of jurisdiction. 

 After the first trial ended in a mistrial and the second trial resulted in a hung jury,
appellant refiled his application for writ of habeas corpus on September 4, 1996 and again on
September 26. The record indicates that a hearing on an application for writ of habeas corpus was
held on October 8, a month before the trial that resulted in appellant's conviction, and that the
motion was denied; however, no reporter's record has been filed regarding this hearing.

 A writ of habeas corpus is an order from a judge commanding a party, who is
alleged to be restraining the applicant in some way, to appear before the court with the applicant
and explain the reasons for the restraint. See Tex. Code Crim. Proc. Ann. art. 11.01 (West
1977). The pretrial writ of habeas corpus is the proper procedural vehicle to utilize in seeking
relief from exposure to double jeopardy. See Ex parte Apolinar, 820 S.W.2d 792, 794 (Tex.
Crim. App. 1991); Ex parte Robinson, 641 S.W.2d 552, 555 (Tex. Crim. App. 1982). Whether
a trial judge issues a writ of habeas corpus is a matter of discretion. See Ex parte Fowler, 573
S.W.2d 241, 244 (Tex. Crim. App. 1978), overruled on other grounds, Ex parte Spaulding, 612
S.W.2d 509 (Tex. Crim. App. 1981); see also Ex parte Carter, 849 S.W.2d 410, 412 (Tex.
App.--San Antonio 1993, pet. ref'd) (Onion, J.); Williams v. Harmon, 788 S.W.2d 192, 193
(Tex. App.--Houston [1st Dist.] 1990, no pet.). The issuance of the writ is a necessary step for
the trial court to hear the basis for the relief sought. See Carter, 849 S.W.2d at 413.

 A trial court's ruling on a pretrial writ of habeas corpus alleging that a trial on the
merits will subject the defendant to double jeopardy is appealable only when the trial court issues
the writ and then rules upon the merits of the questions presented at the hearing and denies the
relief sought. See Robinson, 641 S.W.2d at 555. No appeal lies from a trial court's refusal to
issue the writ. See Ex parte Hargett, 819 S.W.2d 866, 868-69 (Tex. Crim. App. 1991); see also
Ex parte Miller, 931 S.W.2d 724, 725 (Tex. App.--Austin 1996, no pet.); Carter, 849 S.W.2d
at 412-14. 

 Although appellant argues that he was denied the right to fully litigate his claim of
double jeopardy before trial, he fails to present a situation in which he was denied an appeal
following the issuance of a writ of habeas corpus and a denial of relief pursuant to a hearing on
the merits. The trial court's denial of relief on July 7, 1995 was not based on a consideration of
appellant's application for writ of habeas corpus. Moreover, without a reporter's record of the
October 8, 1996 hearing before us, we cannot discern: (1) which of appellant's multiple
applications for writ of habeas corpus was the subject of the hearing, or (2) assuming that
appellant's double jeopardy claim was the subject of the hearing, whether the trial court issued a
writ and denied relief based on the merits of appellant's application or simply refused to issue a
writ. As in Ex parte Noe, 646 S.W.2d 230, 231 n.1 (Tex. Crim. App. 1983), we are not dealing
with a case where the trial court, after the filing of a habeas corpus application, grants or issues
the writ of habeas corpus and, after a hearing, grants or denies relief. Under the circumstances,
we have no jurisdiction to decide whether the trial court erred. Appellant's first point of error is
dismissed.

 In his second point of error, appellant argues that the State was barred from
prosecuting him for the aggravated sexual assault of S.A. because jeopardy attached at the parole
revocation hearing. The Fifth Amendment states that no person shall "be subject for the same
offense to be twice put in jeopardy of life or limb." This proscription against double jeopardy
prohibits more than one criminal punishment or attempt at criminal punishment for the same
offense. See United States v. Ursery, 518 U.S. 267 (1996).

 In United States v. Whitney, 649 F.2d 296, 298 (5th Cir. 1981), the Fifth Circuit
Court of Appeals addressed the issue of whether the Double Jeopardy clause applies to parole
revocation proceedings. The court held that parole revocation proceedings are not essentially
criminal in nature because they are not designed to punish a criminal defendant for a violation of
a criminal law. Whitney, 649 F.2d at 298. Rather, the purpose of a parole revocation hearing is
to determine whether a parolee has violated the conditions of his parole. Id. Even though the
alleged basis for parole revocation may be the commission of a subsequent offense, the revocation
proceedings are not designed to obtain a conviction for that offense. See Showery v. Samaniego,
814 F.2d 200 (5th Cir. 1987). Because appellant's parole revocation hearing arising out of the
aggravated sexual assault charges was not "criminal in nature," his subsequent criminal
prosecution on those charges did not expose him twice to potential punishment for criminal
charges, and double jeopardy was not implicated. (4) We overrule appellant's second point of error.

 In his third point of error, appellant argues that the trial court erred by refusing to
instruct the jury after sustaining appellant's objections. Appellant, citing Texas Rule of Evidence
105(a), contends that several of his objections during trial merited an instruction to disregard: 
three objections to "asked and answered" questions, two objections to leading questions, one
objection for badgering the witness, one objection because the question required speculation, and
one objection because the question mischaracterized earlier testimony. See Tex. R. Evid. 105(a)
("When evidence which is admissible as to one party or for one purpose but not admissible as to
another party or for another purpose is admitted, the court, upon request, shall restrict the
evidence to its proper scope and instruct the jury accordingly . . . .").

 Appellant cites no authority to support the application of Rule 105(a) to the present
situation. Instead, appellant cites Rankin v. State, 974 S.W.2d 707 (Tex. Crim. App. 1996), for
the proposition that when evidence is admitted for a limited purpose under Rule 105(a) and a
limiting instruction is requested, it is reversible error for the trial court to refuse to give the
limiting instruction. The defendant in Rankin was charged with aggravated sexual assault. The
trial court admitted testimony concerning two extraneous offenses and provided a limiting
instruction in the jury charge rather than at the time the testimony came into evidence. Rankin,
974 S.W.2d at 708. The court of criminal appeals held that the trial court erred and should have
given the limiting instruction contemporaneously with the extraneous offense testimony. Id.

 The holding in Rankin is specifically tailored to Rule 105(a). "The purpose of . . .
midtrial limiting instructions is to insure that jurors realize the proper use of each bit of evidence
as it comes in." Id. The limiting instructions requested by appellant were not instructions as to
the evidence admitted, but only as to the form of the question, and therefore Rankin and Rule
105(a) are inapplicable. We overrule appellant's third point of error.

 In his fourth point of error, appellant contends that the trial court erred by not
granting his "Plea in Bar Seeking Relief from Double Jeopardy" filed on September 4, 1996. In
the plea, appellant argued that the judge in the second trial erred in declaring a mistrial.

 The record shows appellant's second trial began on July 22, 1996. The charge was
read to the jury at 10:30 a.m. on July 26. The jury began its deliberations that day. At noon on
July 27, the jury informed the judge by note that there did not appear to be any chance of a
unanimous verdict on any of the three charges. The judge directed the jury to continue its
deliberations. At 2:36 p.m., the jury again reported that it was deadlocked. The judge gave the
jury an Allen charge instructing it to continue its deliberations. See Allen v. United States, 164
U.S. 492 (1896). At 6:00 p.m., the jury expressed its inability to reach a unanimous verdict and
the trial court discharged the jury on the State's motion. Appellant was later retried for the same
offenses.

 Both the Fifth Amendment to the United States Constitution and article I, section
14 of the Texas Constitution prohibit a State from twice putting a defendant in jeopardy for the
same offense. See Arizona v. Washington, 434 U.S. 497, 503 (1978); Ex parte Mitchell, 977
S.W.2d 575, 580 (Tex. Crim. App. 1997). Jeopardy attaches when a jury is impaneled and
sworn. See Ex parte Little, 887 S.W.2d 62, 64 (Tex. Crim. App. 1994). As a general rule, if,
after the defendant is placed in jeopardy, the jury is discharged without reaching a verdict, double
jeopardy will bar retrial. See Brown v. State, 907 S.W.2d 835, 839 (Tex. Crim. App. 1995)
(citing Green v. United States, 355 U.S. 184, 188 (1957)). "An exception to this rule is made if
the defendant consents to a retrial, or if a retrial before a new judge is mandated by some form of
manifest necessity." Torres v. State, 614 S.W.2d 436, 441 (Tex. Crim. App. 1981) (citing
Washington, 434 U.S. at 505). Thus, where manifest necessity exists to declare a mistrial, the
constitutional prohibition against double jeopardy is not implicated and retrial is permitted. See
Brown, 907 S.W.2d at 839.

 The Supreme Court has stated that a trial court's discretion to declare a mistrial is
limited to "very extraordinary and striking circumstances." See id. (citing Downum v. United
States, 372 U.S. 736 (1963)). The inability of a jury to reach a verdict after considerable
deliberations is one such circumstance. Id. Indeed, the Code of Criminal Procedure allows the
court "in its discretion" to declare a mistrial "where [the jury] has been kept together for such
time as to render it altogether improbable that it can agree." Tex. Code Crim. Proc. Ann. art.
36.31 (West 1981). The trial court is to be afforded broad discretion in such situations with
respect to determining whether there is a manifest necessity; if it fails to discharge a jury, it risks
a verdict reached from inherent pressures rather than from the considered judgment of all the
jurors. See Zavala v. State, 956 S.W.2d 715, 720 (Tex. App.--Corpus Christi 1997, no pet.)
(citing Washington, 434 U.S. at 509).

 Despite a trial court's discretion in declaring a mistrial based on manifest necessity,
the court is required to consider and rule out "less drastic alternatives" prior to granting a mistrial. 
See Brown, 907 S.W.2d at 839. There can be no manifest necessity, and consequently no mistrial,
without the court first reviewing the alternative courses of action and choosing the one that, in
light of all the circumstances, best preserves the defendant's "right to have his trial completed
before a particular tribunal." Id. (citing Harrison v. State, 788 S.W.2d 18, 21 (Tex. Crim. App.
1993)). Where a trial judge grants a mistrial despite the available option of less drastic
alternatives, there is no manifest necessity and we will find an abuse of discretion. Id. (citing
Little, 887 S.W.2d at 66).

 Appellant had the burden of presenting a record before the second trial judge and
this Court in support of his allegation of former jeopardy. See Pompa v. State, 787 S.W.2d 585,
587 (Tex. App.--San Antonio 1990, no pet.) (citing Anderson v. State, 635 S.W.2d 722, 725
(Tex. Crim. App. 1982)). The record before us does not reflect what objections, if any, were
made by appellant to the granting of the mistrial. Therefore, we are unable to determine whether
the mistrial was granted without the consent of the appellant. Furthermore, the record does not
reflect whether appellant obtained a ruling on his plea in bar.

 In any event, we conclude that the trial court did not err in declaring a mistrial. 
The exercise of discretion by a trial court in declaring a mistrial is determined by the amount of
time the jury deliberated in light of the nature of the case and the evidence. See Bynum v. State,
874 S.W.2d 903, 907 (Tex. App.--Houston [1st Dist.] 1994, pet. ref'd) (citing Patterson v. State,
598 S.W.2d 265, 268 (Tex. Crim. App. 1980)). Whether it is improbable that the jury would
render a verdict may also be evidenced by how long the jury was deadlocked, and whether the
margin of disagreement changed during the course of deliberations. Id. (citing Beeman v. State,
533 S.W.2d 799, 800-01 (Tex. Crim. App. 1976)).

 Although the record is imprecise, it indicates that the jury in the second case
deliberated for approximately fifteen hours. During the course of its deliberations, the jury twice
told the judge of its inability to reach a unanimous verdict. The judge instructed the jury to
continue deliberating each time and issued an Allen charge pursuant to the second instruction. (5)
Based on the amount of time the jury deliberated, the judge's efforts to break the deadlock, and
the jury's indication that further deliberations would not have been helpful, we conclude that the
court did not abuse its discretion. We overrule appellant's fourth point of error.

 In his fifth point of error, appellant contends that the trial court erred in allowing
the State to cross-examine one of appellant's witnesses about appellant's criminal record. On
direct, defense counsel elicited testimony concerning appellant from Carter Hutson, a former
director of a 4-H horse program in Travis County. Hutson testified that he met appellant in the
early 1970s when appellant "began to drop around" the horse facility. (6) The testimony continued
as follows:


Q: And was [appellant] a bit of a cowboy?


A: Yes, sir, [appellant] was a good horseman in his younger days. He got along
real good with the kids. They all respected him and he respected them and -- 



Later in Hutson's testimony he again highlighted defendant's abilities with children:



Q: And would [appellant] instruct people on how to do those activities?


A: Yes. He would -- he -- [appellant] amazed me because he evidently had a
softness for kids and he would see a kid have a particular problem with a horse
and he would walk to them and say, "If you try this, I think this would work
for you."


Q: Okay.


A: And he got along good with the kids.



Hutson also testified that in 1976, appellant injured his left arm and was no longer able to ride
horses as well as he did prior to the injury.

 When defense counsel completed direct, the State was granted a hearing outside the
presence of the jury. The State argued that Hutson's testimony had opened the door for "did-you-
know" questions concerning appellant's character. See Tex. R. Evid. 404(a)(1)(A); 405(a). 
Defense counsel contended that because the questions posed to Hutson did not seek to elicit
information concerning appellant's character, Hutson's statements were spontaneous and did not
open the door to the admission of character evidence. The court concluded that Hutson's
testimony concerning appellant's work with children constituted character evidence in the context
of a sexual assault case and allowed the State to solicit testimony concerning appellant's violent
character. The State proceeded to ask whether Hutson knew about appellant's other arrests and
convictions. The defense was allowed to inquire about the circumstances surrounding the specific
instances of violent conduct, including any potentially mitigating factors.

 In determining whether a trial court erred in admitting evidence, we apply an abuse
of discretion standard. See Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990). 
Texas Rule of Evidence 404(a)(1) permits an accused to offer and the prosecution to rebut
evidence of a pertinent trait of character "for the purpose of proving action in conformity
therewith on a particular occasion." Rule 405 provides that a trait of character may be proved by
reputation or opinion testimony and, where it is "an essential element of a charge, claim, or
defense," by specific instances of conduct. Thus, if a witness creates what is purported to be a
false impression about the accused's nature as a law-abiding citizen or his propensity for
committing criminal acts, then the witness has opened the door to cross-examination concerning
relevant specific instances of conduct. See Bratcher v. State, 771 S.W.2d 175, 186-87 (Tex.
App.-- San Antonio 1989, no pet.).

 By testifying to appellant's exemplary relationship with children, Hutson became
a character witness, espousing his opinion about appellant's non-violent character. (7) See Hedicke
v. State, 779 S.W.2d 837, 839 (Tex. Crim. App. 1989) (stating that personal opinion testimony
of a witness who knows the person is one method of proving character). The State was entitled
to present rebuttal evidence that consisted of appellant's violent conduct, subject to two limitations.

 First, the State was required to lay some factual foundation, outside the jury's
presence, for the incidents inquired about. See In re G.M.P., 909 S.W.2d 198, 210 (Tex.
App.--Houston [14th Dist.] 1995, no writ) (citing Reynolds v. State, 848 S.W.2d 785, 788-89
(Tex. App.--Houston [14th Dist.] 1993, pet. ref'd)); see also Quiroz v. State, 764 S.W.2d 395,
399 (Tex. App.--Fort Worth 1989, pet. ref'd); Lancaster v. State, 754 S.W.2d 493, 496 (Tex.
App.--Dallas 1988, pet. ref'd). The factual foundation requirement is meant to ensure that
testimony elicited in cross-examination is not purely speculative. Proof of the examiner's good
faith belief that the behavior in question has some basis in fact is required. See Starvaggi v. State,
593 S.W.2d 323, 328 (Tex. Crim. App. 1979); Bratcher, 771 S.W.2d at 187; see also 2 Steven
Goode, Olin G. Wellborn, III & M. Michael Sharlot, Guide to the Texas Rules of Evidence: Civil
and Criminal § 405.2.4 (Texas Practice 1993). Second, the incidents must be relevant to character
traits at issue in the trial. See In re G.M.P., 909 S.W.2d at 210; Reynolds, 848 S.W.2d at 788-89;
Quiroz, 764 S.W.2d at 399; Lancaster, 754 S.W.2d at 496.

 At the hearing outside the presence of the jury, the State argued that appellant had
testified at a prior trial concerning the specific instances of conduct about which the State wished
to question Hutson. Convictions and offense reports provided an additional factual basis for the
questions. See Starvaggi, 593 S.W.2d at 593. The witness in the instant case was an opinion
witness and it was proper under Rule 405(a) for the State, on cross-examination, to have asked the
complained of "did-you-know" questions. There is nothing to suggest that the prosecutor was
acting in bad faith or had no basis for the questions.

 Furthermore, each specific instance of conduct raised by the prosecution in its
questioning was relevant to character traits at issue in the trial. (8) Appellant was charged by
indictment with aggravated sexual assault; therefore, a previous arrest for sexual assault was
relevant. Although the sexual assault charges against appellant were later dropped, the appellant
need not be convicted of the crime for it to be the subject of did-you-know questioning of character
witnesses. See Drone v. State, 906 S.W.2d 608, 616 (Tex. App.--Austin 1995, pet. ref'd). 
Appellant's convictions for burglary were relevant because the State alleged, and the appellant
denied, that appellant stole several items from S.A.'s home, namely a telephone and S.A.'s purse.

 Finally, two murder arrests were also relevant to character traits at issue. Hutson
testified that appellant's arm was maimed during an accident in 1976. (9) One of the homicides (in
addition to both burglaries and the alleged sexual assault) occurred after 1976; therefore, testimony
concerning the homicide counters appellant's defense at trial that he was too crippled to sexually
assault S.A. (10) While it is unclear from the record whether the other homicide occurred before or
after the allegedly crippling injury, its introduction was harmless error given the cumulative
impact of the character evidence (one sexual assault, two burglaries, and one homicide), and
defense counsel's opportunity to inquire about the basis for the witness's knowledge and to ask
redirect questions concerning self-defense. See King v. State, 953 S.W.2d 266, 271 (Tex. Crim.
App. 1997). We conclude that the trial court did not abuse its discretion in permitting the cross-examination. We overrule appellant's fifth point of error.

 In points of error six through eight, appellant argues the State introduced prejudicial
and irrelevant forensic evidence and unfairly shifted the burden of producing additional forensic
evidence to the defendant. In points six and seven, appellant raises a complaint concerning a pair
of scissors, while point of error eight focuses on an examination of bed sheets. We will first
address issues raised by the introduction of the scissors, and then discuss the testimony concerning
the sheets.

 Appellant argues that testimony concerning the scissors he allegedly used to threaten
S.A. should not have been admitted into evidence because the prejudicial effect of the testimony
far outweighed its probative value. At trial, the State called a latent prints expert, Oscar Kizzee,
Jr. He testified that he found no fingerprints that matched those of appellant on the scissors. He
further testified that there were eight smudged fingerprints on the scissors that he could not
identify, and two prints that matched S.A.'s fingerprints. Justifying his inability to match prints,
he stated that intact fingerprints were very difficult to locate since these markings were often
obscured by wiping, or were otherwise affected by the weather or the surface of the object. 
During direct examination, the State introduced a picture of the scissors dusted to show the
smudged fingerprints. On cross-examination, defense counsel highlighted that none of the prints
matched those of appellant.

 We review relevance questions under an abuse of discretion standard. See
Montgomery, 810 S.W.2d at 379. "Evidence merely tending to affect the probability of the truth
or falsity of a fact in issue is logically relevant." Id. at 376. Rule 403 allows the admission of
all relevant evidence unless the probative value is substantially outweighed by the danger of unfair
prejudice to the defendant. The burden of proof is on the party claiming lack of relevance, and
that party must show that the prejudice substantially outweighs the relevance. See id. at 377.

 In his opening statement, defense counsel commented on the lack of forensic
evidence. Kizzee testified that the State had looked for prints and that the prints found were too
smudged to produce an accurate reading. Under the relevance standard set out above, Kizzee's
print testimony did tend to affect the jury's opinion concerning a fact at issue. As to prejudice,
Kizzee at no time indicated that any of the eight smudged prints belonged to appellant. In any
case, more graphic testimony concerning the scissors and the scissors themselves were admitted
into evidence without objection when S.A. took the stand. Assuming there was prejudice in
Kizzee's testimony, it did not substantially outweigh the testimony's probative value. We overrule
appellant's sixth point of error.

 Likewise, prejudice did not substantially outweigh probative value when the court
admitted a photograph of the scissors into evidence. In Emery v. State, 881 S.W.2d 702, 710
(Tex. Crim. App. 1994), the court of criminal appeals reiterated the general rule that a photograph
is admissible where verbal testimony about the same matters is admissible. The photographs at
issue in Emery displayed the naked body of a stabbing victim. Emery, 881 S.W.2d at 704. The
Emery court held that all twelve pictures were admissible because experts testified to different
aspects of the crime using these photographs. Id. at 710. Kizzee's verbal testimony concerning
the scissors was admissible, and therefore the underlying photograph was admissible. Moreover,
the prejudice caused by one picture of a dusted pair of scissors does not outweigh its probative
value. We overrule appellant's seventh point of error.

 In his eighth point of error, appellant contends that the trial court committed
reversible error by allowing the State to shift the burden of proof for key evidence onto the
appellant's shoulders. Meghan Mendenhall, the State's forensic expert on blood typing, tested
several items for evidence of appellant's bodily fluids. She did not, however, test bed sheets from
the victim's home. Defense counsel asked Mendenhall why she did not test the sheets and she
responded that, not being aware of defense counsel's theory of consensual sex between appellant
and S.A., she believed other items provided the best evidence of sexual assault. In response to
defense counsel's cross-examination, the prosecutor asked Mendenhall whether defense counsel
had contacted her to request that she test the sheets. At this point, defense counsel objected that
the question shifted the burden to appellant. The objection was overruled, and Mendenhall
testified that defense counsel had not asked her to test the bedding.

 Appellant cites to Sandstrom v. Montana (11) and Mullaney v. Wilbur (12) to support his
contention that courts have struck down attempts at burden-shifting from the State to the
defendant. The United States Supreme Court in Sandstrom reversed a conviction based on a
burden-shifting jury instruction, and the Court in Mullaney reversed a conviction because the
underlying statute shifted the burden. In the instant case, the alleged burden shifting occurred in
a series of questions by the prosecution on redirect. The burden shifting in both Mullaney and
Sandstrom allowed the State to sidestep the requirement of proving every element of the crime. 
See 421 U.S. at 701; 442 U.S. at 521. By asking Mendenhall whether defense counsel had
contacted her to discuss any additional testing, the prosecutor was responding to an issue raised
by defense counsel. This action did not decrease the State's ultimate burden of proof; the State
still had to prove every element of the aggravated sexual assaults to the jury beyond a reasonable
doubt. We overrule appellant's eighth point of error.

 In his ninth point of error, appellant contends that the trial court erred by overruling an
objection made during the State's questioning of Oscar Kizzee. Appellant argues that the court's
failure to sustain his objection left the jury with the impression that appellant's counsel was
somehow cheating. Appellant points to the following exchange:


Q: You've got people in the house that are in the house all of the time you might
expect to see a number of people's prints on the scissors; is that accurate?


A: That's correct.


Q: Okay. But you can't get into comparisons, can you, unless you get the seven-point rule met?


A: That's correct.


A: It would be, in fact, cheating, wouldn't it, for you and I to start doing that
now?


A: Yes, sir.


Q: He can do it, [defense counsel], you've got the stuff there to talk about, right?


A: Yes, sir.


Q: He can ask you, but I --


Defense counsel: I'm going to object to this entire line of questioning again, Your
Honor. This is highly prejudicial, I mean he is accusing us of cheating--


State: No, sir.


Court: Overrule the objection.



 While it is improper for the State to strike at a defendant over the shoulders of his
counsel or to accuse defense counsel of bad faith and insincerity, see Bell v. State, 614 S.W.2d
122, 123 (Tex. Crim. App. 1981), we hold that the trial court did not abuse its discretion in
overruling appellant's objection to the questioning of Kizzee. The prosecution did not directly
accuse appellant's counsel of cheating. Moreover, any indirect accusation by the prosecution of
improper behavior by defense counsel cannot be easily inferred from the record. Finally, even
if the jury was left with the impression that the defense would be cheating if it asked Kizzee to
identify the unknown prints without using the seven-point standard of analysis, neither the State
nor the defense asked Kizzee to do so. We overrule appellant's ninth point of error.

 In his tenth point of error, appellant contends that, under his due process right to
a fair trial, the judge in the third trial was estopped from denying defense counsel the use of an
audiotape to impeach S.A.. (13) At appellant's second trial, the court permitted the defense to cross-examine S.A. concerning recorded statements she made while testifying at appellant's parole
revocation hearing. At appellant's third trial, the judge admitted the tape from the parole hearing
for use as a source of impeachment. The judge limited its use, however, to the sections where
inconsistencies could be shown; he did not allow defense counsel to play the entire audiotape to
the jury. Defense counsel failed to specify the alleged inconsistencies or to redact the tape as
directed by the court.

 The decision to admit or exclude evidence is within the trial court's discretion and
should not be set aside absent a showing of abuse of discretion. See Joiner v. State, 825 S.W.2d
701, 708 (Tex. Crim. App. 1992); see also Erdman v. State, 861 S.W.2d 890, 893 (Tex. Crim.
App. 1993). A trial court's evidentiary ruling should be upheld if it is "within the zone of
reasonable disagreement." See Montgomery, 810 S.W.2d at 391. The trial judge was well within
his discretion to allow only a redacted version of the tape as impeachment, and defense counsel
did not comply. We overrule appellant's tenth point of error. 


CONCLUSION

 Having overruled all of appellant's points of error, we affirm the judgment of
conviction.



 

 Jan P. Patterson, Justice

Before Chief Justice Aboussie, Justices Yeakel and Patterson

Affirmed

Filed: June 30, 1999

Do Not Publish

1. One application was filed on September 4, 1996, two on September 26, and one on
September 30. Two of the four applications concerned appellant's double jeopardy claim, and two
alleged that appellant should be released because of delay pursuant to article 17.151 of the Texas
Code of Criminal Procedure.
2. S.A. identified the scissors at trial as a pair she kept in her house, and the scissors were
admitted in evidence without objection.
3. In his brief on appeal, appellant relies upon both state and federal law to support his claim
of double jeopardy; at oral argument, appellant conceded that his argument was based on federal
law alone. See Heitman v. State, 815 S.W.2d 681, 691 (Tex. Crim. App. 1991). 
4. Appellant argues that United States v. Ursery, 518 U.S. 267 (1996) and Department of
Revenue v. Kurth Ranch, 511 U.S. 767 (1994), stand for the proposition that double jeopardy
attaches at a parole revocation hearing and bars further criminal prosecution. We disagree. 
Neither case considers whether parole revocation proceedings are criminal in nature nor do any
subsequent federal cases apply Ursery or Kurth Ranch to parole revocation proceedings. We also
note that this issue has been previously considered in Texas. See, e.g., Settles v. State, 403
S.W.2d 417, 418 (Tex. Crim. App. 1966); Ex parte Daniel, 781 S.W.2d 412, 413 (Tex.
App.--Houston [1st Dist.] 1989, pet. ref'd) (parole revocation hearing does not foreclose state
from prosecuting). 
5. See Torres v. State, 961 S.W.2d 391, 393 n.1 (Tex. App.--Houston [1st Dist.] 1997, pet.
ref'd) (describing Allen charge an as attempt "to break a deadlocked jury by instructing that the
result of a hung jury is a mistrial and that jurors at a retrial would be faced with essentially the
same decision, and encouraging the jurors to try to resolve their differences without coercing one
another.").
6. Hutson testified on cross-examination that appellant "was strictly a volunteer helper with the
4-H." 
7. We note that Hutson's testimony on direct was very brief, spanning only six pages of the
record. Besides testifying about appellant's "softness for kids," Hutson's only other area of
testimony concerned the effect appellant's 1976 injury had on appellant's physical abilities, a topic
about which both appellant and appellant's mother testified in detail.
8. Examples of what courts have deemed relevant can be found in the Lancaster and Quiroz
cases. In Lancaster, the defendant had been charged with aggravated robbery and his character
witness had testified defendant was non-violent and not a danger to society. 754 S.W.2d at 494. 
Because the court found the material relevant, the State was allowed to cross-examine the witness
about four prior theft offenses for which the defendant had been charged but not convicted. Id.
at 495-96. In Quiroz, the defendant had requested probation and in his request he had sworn to
abide by the terms of probation; one of the terms was providing the necessary child support. 
Quiroz, 764 S.W.2d at 399. Owing to this requirement, the State was allowed to ask Quiroz's
character witnesses whether they knew that Quiroz had denied paternity of his child. Id.
9. Appellant's mother, Lola Monroe, testified that the crippling accident occurred in 1975.
10. S.A. was described as petite, and she weighed about 100 pounds at the time of the sexual
assault.
11. 442 U.S. 510 (1979).
12. 421 U.S. 684 (1975).
13. Appellant invokes judicial estoppel in his tenth point of error. Judicial estoppel prevents
a party from contradicting a previous position successfully maintained in a prior judicial
proceeding. See Southwest Guar. Trust Co. v. Providence Trust Co., 970 S.W.2d 777, 783 (Tex.
App.--Austin 1998, pet. denied). As appellant acknowledges, judicial estoppel is generally only
invoked in civil cases, and applies to the parties, not the judge. See Davidson v. State, 737
S.W.2d 942, 948 (Tex. App.--Amarillo 1987, pet ref'd); United States v. McCaskey, 9 F.3d 368,
378 (5th Cir. 1993). It is, therefore, inapplicable.


ly: CG Times">Filed: June 30, 1999

Do Not Publish

1. One application was filed on September 4, 1996, two on September 26, and one on
September 30. Two of the four applications concerned appellant's double jeopardy claim, and two
alleged that appellant should be released because of delay pursuant to article 17.151 of the Texas
Code of Criminal Procedure.
2. S.A. identified the scissors at trial as a pair she kept in her house, and the scissors were
admitted in evidence without objection.
3. In his brief on appeal, appellant relies upon both state and federal law to support his claim
of double jeopardy; at oral argument, appellant conceded that his argument was based on federal
law alone. See Heitman v. State, 815 S.W.2d 681, 691 (Tex. Crim. App. 1991). 
4. Appellant argues that United States v. Ursery, 518 U.S. 267 (1996) and Department of
Revenue v. Kurth Ranch, 511 U.S. 767 (1994), stand for the proposition that double jeopardy
attaches at a parole revocation hearing and bars further criminal prosecution. We disagree. 
Neither case considers whether parole revocation proceedings are criminal in nature nor do any
subsequent federal cases apply Ursery or Kurth Ranch to parole revocation proceedings. We also
note that this issue has been previously considered in Texas. See, e.g., Settles v. State, 403
S.W.2d 417, 418 (Tex. Crim. App. 1966); Ex parte Daniel,