Opinion issued November 4, 2010



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00753-CR

———————————

Carlos Andres Barrientos, Appellant

V.

The State of Texas, Appellee



 



 

On Appeal from the 180th District Court

Harris County, Texas



Trial Court Case No. 1157995

 



 

MEMORANDUM OPINION

          A
jury convicted appellant, Carlos Andres Barrientos, of robbery and assessed
punishment at five years’ confinement and a $5,000 fine.[1]  In one issue, appellant contends that the
trial court erred in admitting, during the punishment phase, text messages
received by a cell phone in appellant’s possession and confiscated when he was arrested
on an unrelated charge, because these messages constituted inadmissible
hearsay.

          We
affirm.

Background

          On
September 21, 2006, Marco Urioste, the complainant, drove from College Station
to Houston to purchase computer parts from Hyon Sup Shin, whom he had met
through online gaming.  The complainant
met Shin at Memorial City Mall, and the men drove in their separate cars to an
apartment complex to view the computer parts. 
When they arrived at the apartments, appellant, who drove Shin to the
complex, introduced himself to the complainant and the three men talked while
walking to the apartment.  On the way,
two unidentified men approached and walked very close to the complainant,
“star[ing him] down.”  Shin then remembered
that he had left his apartment key in appellant’s car, and the complainant
realized that he had forgotten his safe, which contained approximately $1,500
in cash, in his car, so the men walked back to the parking lot.

          The
complainant removed his safe from the trunk of his car and noticed the two
unidentified men approaching again. 
After one of the men asked if they had marijuana, and Shin replied that
they did not want any trouble, one of the men attempted to punch the
complainant.  During the ensuing fight,
the complainant saw appellant punch him in the neck, so the complainant punched
appellant in the face.  All four men
began punching and kicking the complainant. 
The complainant testified that someone sprayed him with mace, and, at
one point, someone stabbed the complainant in the back.  The complainant managed to escape, and, while
running away, he looked back and saw the four men picking up his safe and the
money that had spilled out during the fight. 
A jury convicted both Shin and appellant of robbery.

          At
appellant’s punishment hearing, Memorial Village Police Officer W. Truess
testified that, on August 1, 2008, which occurred while appellant was released
on bail before the robbery trial, he arrested appellant at a house for criminal
trespass.  During the search incident to
arrest, Officer Truess discovered a bag of white powder in appellant’s pants
pocket, which later field-tested positive for cocaine.  According to Officer Truess, after he
discovered the cocaine, appellant told him that he was trying to see a girl who
lived at the house and he was “bringing the white powder in his pocket to her”
at her request.  Officer Truess also
stated that appellant asked him to look at the text messages saved on the cell phone
he had in his possession at the time of arrest. 
The State attempted on three separate occasions to have Officer Truess
testify regarding the content of appellant’s received text messages, and each
time the trial court sustained appellant’s hearsay objections.  The trial court also sustained appellant’s
objection and instructed the jury to disregard the State’s question of whether
Officer Truess was “able to determine if [appellant] was a drug dealer based on
[his] contact with [appellant] that night.”

          During
the punishment phase of the trial, appellant called his girlfriend, Shusheila
Dashnukh, as a character witness.  She
testified that she had known appellant for five years before the trial, they
were “very very good friends,” and he treats her “very great.”  Defense counsel asked Dashnukh whether she
knew if appellant used drugs, and she replied that he had and he had previously
been enrolled in a drug rehabilitation program. 
Dashnukh testified that she knew what happens when a defendant does not
obey the terms of probation and that she was willing to do “everything I can”
to help appellant comply with any probation conditions the trial court imposed.  She stated that she believed that appellant
could successfully follow probation conditions.

          On
cross-examination, the State questioned Dashnukh about appellant’s drug use and
stay in rehab.  She confirmed that
appellant’s mother had caught him with marijuana in July 2008, while he was on
bail for the present offense.  Dashnukh
agreed with the State that this conduct violated the terms of appellant’s
bail.  She further testified that she
found out about appellant’s arrest for trespass and cocaine possession after it
happened, she did not know where appellant got the cocaine he was delivering, and
that did she know whether he was selling cocaine to others.  The State began to ask whether it would
surprise Dashnukh to learn that appellant had received text messages containing
drug references, but the trial court sustained appellant’s hearsay objection.

The State then asked Dashnukh if
she knew whether appellant was a drug dealer, and she testified that he was
not.  Dashnukh testified that she checked
appellant’s cell phone “all the time, even when [appellant] was sleeping” and that
appellant never received any text messages referencing drugs.  The trial court agreed with the State that
the text messages appellant received were now relevant.  The State asked whether it would surprise Dashnukh
to learn that, on the date Officer Truess arrested appellant, he received a
text asking, “[D]o you think I can get an eighth tonight?”  The trial court overruled appellant’s
objections on hearsay, relevance, improper impeachment, and Texas Rule of
Evidence 404(b) grounds.  Dashnukh
testified that she did not know the sender of the message and it would surprise
her to learn that an “eighth” is a drug reference.  Dashnukh further agreed that it would
surprise her to learn that appellant received a second text that night stating
that the sender “want[ed] three ounces of F 15 for a thousand dollars,” and she
testified that she had never before seen text messages like those on appellant’s
phone.  The trial court overruled
appellant’s same four objections to the contents of the second text message.

          Appellant
also called his mother, Alejandra McCutchen, as a character witness.  She testified that appellant was “a great kid”
who never got into trouble, was very obedient, and “always [did] very
well.”  She also testified about
appellant’s previous drug use and stay in rehab.  According to McCutchen, appellant had to
undergo drug testing while at rehab and he was able to follow the rules of the
program.  She testified that she knew
appellant better than anyone, and she was sure he could follow the rules of
probation.  On cross-examination,
McCutchen agreed that appellant had violated the conditions of his bail when
she caught him with marijuana.  She
testified that she knew some of the details of appellant’s trespass arrest, but
it surprised her that he was delivering cocaine to someone.  The State asked McCutchen if it would
surprise her to know that appellant received “text messages about drugs.”  Appellant made the same four objections that
he made during Dashnukh’s cross-examination, and the trial court overruled each
of these objections.  McCutchen responded
that she would be surprised and that she did not know anything about appellant’s
engaging in drug dealing activities.

          During
closing argument of the punishment phase, the State made four references to appellant’s
extraneous offense.  The State first
mentioned that appellant was dealing cocaine and smoking marijuana while on
bail for the charged offense and that this was a “way of life” for him.  The State again mentioned that appellant attempted
to deliver cocaine to someone while on bail and that he received a text message
asking if he had “an eighth.”  According
to the State, appellant is “clearly a drug dealer.”  The State further argued that McCutchen
“doesn’t even know about [appellant’s activities], because she’s a mother that
loves her kid and is blind to who he really is, which is a robbing drug
dealer.”  The State then made one final
reference to appellant’s delivering cocaine, and commented that, before the
State introduced the evidence, the jury “probably didn’t think he was out there
doing that,” based upon his appearance and demeanor during the trial.  Defense counsel did not object to any of
these arguments.

          The
jury assessed appellant’s punishment at five years’ confinement and a $5000
fine.

Standard of Review

          We
review a trial court’s decision to admit or exclude evidence during the
punishment phase for an abuse of discretion. 
Zuliani v. State, 97 S.W.3d
589, 595 (Tex. Crim. App. 2003).  A trial
court abuses its discretion only if its decision is “so clearly wrong as to lie
outside the zone within which reasonable people might disagree.”  Taylor
v. State, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); Roberts v. State, 29 S.W.3d 596, 600 (Tex. App.—Houston [1st Dist.]
2000, pet. ref’d).  A trial court does
not abuse its discretion if any evidence supports its decision.  See
Osbourn v. State, 92 S.W.3d 531, 538 (Tex. Crim. App. 2002).  If the trial court’s decision is correct on
any theory of law applicable to the case, we will uphold the decision, even if
the court gives the wrong reason for its decision.  De La
Paz v. State, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

Admission of Evidence

          Appellant
contends that the trial court erred in admitting the text messages received on
the cell phone appellant had in his possession when Officer Truess arrested him
for trespass and possession, because the messages constituted inadmissible
hearsay.

Hearsay is a statement, other than
one made by the declarant while testifying at trial, that a party offers to
prove the truth of the matter asserted.  Tex. R. Evid. 801(d); Baldree v. State, 248 S.W.3d 224, 230–31
(Tex. App.—Houston [1st Dist.] 2007, pet. ref’d).  Hearsay statements are inadmissible, except
as provided by statute or other rule.  Tex. R. Evid. 802.  A statement that is not offered to prove the
truth of the matter asserted, but rather is offered for some other reason, does
not constitute hearsay.  Guidry v. State, 9 S.W.2d 133, 152 (Tex.
Crim. App. 1999) (citing Jones v. State,
843 S.W.2d 487, 499 (Tex. Crim. App. 1992), overruled
on other grounds, Maxwell v. State,
48 S.W.3d 196 (Tex. Crim. App. 2001)); Yanez
v. State, 199 S.W.3d 293, 307 (Tex. App.—Corpus Christi 2006, pet. ref’d)
(“A statement not offered to prove the truth of the matter asserted is not
hearsay.”).  “Matter asserted” includes
any matter explicitly asserted and any matter impliedly asserted by the
statement, “if the probative value of the statement as offered flows from the
declarant’s belief as to the matter.”  Tex. R. Evid. 801(c).

The State contends that it did not
offer the text messages received by appellant to prove the truth of the matter
impliedly asserted—that
appellant was a drug dealer—but rather that
it offered the text messages to impeach the credibility of Dashnukh and
McCutchen, appellant’s two character witnesses.

At the punishment phase of a trial,
the State and the defendant can offer evidence regarding “any matter the trial
court deems relevant to sentencing.”  See Tex.
Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp.
2010).  Admissible evidence includes, but
is not limited to:

[T]he prior criminal record
of the defendant, his general reputation, his character, an opinion regarding
his character, the circumstances of the offense for which he is being tried,
and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other
evidence of an extraneous crime or bad act that is shown beyond a reasonable
doubt by evidence to have been committed by the defendant or for which he could
be held criminally responsible, regardless of whether he has previously been
charged with or finally convicted of the crime or act.

 

Id.

A witness who testified to the
defendant’s good character can be cross­examined to “test the witness’s awareness of relevant ‘specific instances
of conduct.’”  Wilson v. State, 71 S.W.3d 346, 350 (Tex. Crim. App. 2002); Tex. R. Evid. 405(a) (“In all cases
where testimony is admitted under this rule, on cross­examination inquiry is allowable into relevant
specific instances of conduct.”).  Before
the State may cross-examine a character witness, the State must establish that
(1) the incidents inquired about are relevant to the character traits at issue
and (2) the alleged bad act has a basis in fact.  See
Wilson, 71 S.W.3d at 350–51 (citing Lancaster
v. State, 754 S.W.2d 493, 496 (Tex. App.—Dallas 1988, pet. ref’d)).

Generally, “opinion” witnesses are
asked “did you know” questions on cross-examination to test the basis for their
character assessment.  See Wilson, 71 S.W.3d at 350 n.4 (“[T]he witness who testifies
to the defendant’s character on the basis of personal knowledge is most effectively
challenged by ‘did you know’ questions regarding conduct inconsistent with the
traits to which he has offered his opinion . . . .”); Quiroz v. State, 764 S.W.2d 395, 397–99
(Tex. App.—Fort Worth 1989, pet. ref’d) (holding “did you know” questions asked
of two of defendant’s character witnesses at punishment phase regarding
defendant’s relationship with his daughter and his work were “clearly relevant”
to his request for probation when defendant had sworn that he would abide by
probation terms, two of which were remaining employed and supporting his
dependents).  The party cross-examining
the character witness may not offer extrinsic evidence to prove that the
specific instances actually occurred.  Id. at 351.  The purpose of the inquiry is to test the
character witness and the basis of knowledge for her opinion, and the bad act
is only probative for this reason.  Id. (citing Fed. R. Evid. 405 cmt.).

Appellant’s ability to follow the
terms and conditions of community supervision is a relevant character trait
when determining a potential punishment. 
See Mendiola v. State, 21
S.W.3d 282, 285 (Tex. Crim. App. 2000) (“[T]his Court concluded that ‘[d]etermining
what is relevant . . . should be a question of what is
helpful to the jury in determining the appropriate sentence in a particular
case.” (quoting Rogers v. State, 991
S.W.2d 263, 265 (Tex. Crim. App. 1999))); Quiroz,
764 S.W.2d at 399.  Although the trial
court has considerable discretion in determining the conditions of community
supervision, Code of Criminal Procedure article 42.12, section 11 includes, as
“basic conditions” of community supervision, the requirement that (1) the
defendant commit no offense against the laws of Texas, any other state, or the
United States, (2) the defendant avoid “injurious or vicious habits,” and (3)
the defendant submit to testing for alcohol and controlled substances.  See
Tex. Code Crim. Proc. Ann. art.
42.12, § 11(a)(1)–(2), (14) (Vernon Supp. 2010).

Here, appellant applied for
community supervision, and both Dashnukh and McCutchen testified that they
believed appellant could successfully complete probation, and they would do
everything they could to ensure that appellant followed all the
conditions.  The testimony of appellant’s
two character witnesses that they believed appellant could successfully abide
by the conditions of community supervision and Dashnukh’s testimony that
appellant was not a drug dealer and had never received text messages
referencing drugs entitled the State to cross-examine the witnesses with “did
you know” questions regarding the details of appellant’s arrest and his receipt
of drug-related text messages.  See Wilson, 71 S.W.3d at 350–51; Quiroz, 764 S.W.2d at 399.

The text messages received by
appellant were relevant evidence of his ability to follow the terms and
conditions of community supervision, if granted, including his ability to avoid
committing an offense against the law, avoid injurious or vicious habits, and
submit to testing for alcohol and controlled substances.  See
Tex. Code Crim. Proc. Ann. art.
42.12, § 11(a)(1)–(2), (14); Mendiola,
21 S.W.3d at 285.  This evidence was also
proper to aid the jury in determining the appropriate length of his
sentence.  See Mendiola, 21 S.W.3d at 285; Rogers,
991 S.W.2d at 265.  Thus, the trial
court’s decision to allow the State to question Dashnukh and McCutchen with the
text messages saved on appellant’s phone was not outside the “zone within which
reasonable people might disagree.”  See
Taylor, 268 S.W.3d at 579.  We hold, therefore, that the trial
court reasonably could have concluded that the State introduced the text
messages not for the truth of the matter asserted, but rather to impeach the
credibility of Dashnukh and McCutchen and to test their knowledge of appellant
and their basis for formulating their opinions regarding his character in order
to assist the jury in determining the appropriate punishment.[2]  Therefore, the trial court did not abuse its
discretion in allowing this questioning.

Even if the messages had constituted
inadmissible hearsay and the trial court had erred in permitting the
questioning, we would hold that the error was harmless.  Error in the admission of evidence is
non-constitutional error subject to a harm analysis under Texas Rule of Appellate
Procedure 44.2(b).  Tex. R. App. P. 44.2(b); Jabari v. State, 273 S.W.3d 745, 754
(Tex. App.—Houston [1st Dist.] 2008, no pet.). 
We disregard any non-constitutional error that does not affect a
defendant’s substantial rights by having a “substantial and injurious effect or
influence in determining the jury’s verdict.” 
Jabari, 273 S.W.3d at 754
(citing Morales v. State, 32 S.W.3d
862, 867 (Tex. Crim. App. 2000)); Tex.
R. App. P. 44.2(b).  We should not
reverse a conviction for non-constitutional error if, after examining the
record as a whole, we have “fair assurance that the error did not influence the
jury, or had but slight effect.”  Jabari, 273 S.W.3d at 754 (citing Johnson v. State, 967 S.W.2d 410, 417
(Tex. Crim. App. 1998)).

When determining whether the error
influenced the jury, we consider the entire record including testimony,
physical evidence, the nature of the evidence supporting the verdict, the
character of the alleged error, the State’s theory, the defensive theory, and
closing arguments.  Morales, 32 S.W.3d at 867. 
Generally, the improper admission of evidence does not constitute
reversible error if the same facts are shown by other evidence which is not
challenged.  Leday v. State, 983 S.W.2d 713, 717 (Tex. Crim. App. 1998) (quoting
Crocker v. State, 573 S.W.2d 190, 201
(Tex. Crim. App. 1978)).  At the
punishment stage of the trial, the jury “may consider all of the evidence
adduced at the guilt stage.”  Green v. State, 682 S.W.2d 271, 289
(Tex. Crim. App. 1984) (citing Russell v.
State, 665 S.W.2d 771, 781 (Tex. Crim. App. 1983)).

The punishment range for the
offense of robbery is either community supervision or two to twenty years’
confinement and a fine of up to $10,000. 
See Tex. Code Crim. Proc. Ann. art. 42.12, §§ 3(b), 3g (Vernon
Supp. 2010); Tex. Penal Code Ann.
§§ 29.02(b) (Vernon 2003), 12.33 (Vernon Supp. 2010).  The jury assessed punishment at seven years
and four months’ confinement for Shin, and five years’ confinement and a $5,000
fine for appellant.  Based on the
testimony supporting the guilty verdict, the uncontradicted testimony of
Officer Truess regarding appellant’s second arrest, appellant’s acknowledgement
that he was delivering cocaine to someone at her request, and the testimony of
Dashnukh and McCutchen that appellant possessed marijuana while on bail for the
robbery offense, we conclude that the trial court’s admission of the text
messages could not have caused more than a slight influence on the jury’s
punishment decision.  See Jabari, 273 S.W.3d at 754.  We therefore hold that the trial court’s
admission of the text messages, even if erroneous, would have been harmless
error.

Conclusion

          We
affirm the judgment of the trial court.

 

 

                                                                   Evelyn
V. Keyes

                                                                   Justice


 

Panel
consists of Justices Keyes, Higley, and Bland.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]           See
Tex. Penal Code Ann.
§ 29.02(a)(1) (Vernon 2003).





[2]
          Appellant points out that the
State referred to the text messages several times during closing argument and
characterized appellant as a “robbing drug dealer.”  To the extent appellant contends that these
references indicate that the State offered the text messages for the truth of
the matter asserted, we note that, when determining the purpose for which a
party offers a statement, “the reviewing court should limit itself to the state
of the evidence at the time the trial court was called upon to make a ruling on
admissibility.  The trial court cannot be
asked to speculate on what evidence will be introduced later when determining
whether the context supports a hearsay objection.”  Head v.
State, 4 S.W.3d 258, 262 n.5 (Tex. Crim. App. 1999).  We therefore do not consider the State’s
closing arguments when determining whether the State offered the text messages
for the truth of the matter asserted.